The Susquehanna Fertilizer Company of Balti-
more City *vs.* Thomas H. White & Co.

*Usage—Proof of—How offer to Prove must be made—Pay-
ment by note—Fraudulent representations—Agreement—
Province of Court and Jury.*

In commercial instruments and written contracts, the usage of a par-
ticular trade, profession or place may be proved for the purpose of
ascertaining the meaning of certain words, the signification of
which may be doubtful.

If a word has acquired a peculiar meaning in á certain trade or busi-
ness, either local or general, that meaning will be applied to it in
the construction of written instruments affecting the transactions
growing out of the trade or business; but the fact that the word
has acquired such meaning must be distinctly proved.

Where an offer to prove the existence of a usage is objected to, the
duty devolves on the party making the offer to state distinctly
what was the usage.

Proof of usage for the purpose of explaining the meaning of terms
used in the formation of a contract, should be admitted with ex-
treme caution, and never until the party offering it has distinctly
stated to the Court what he intends to prove.

Where the defendant sets up payment by promissory note for goods
sold, the burden of showing that the promissory note was taken in
absolute payment, the plaintiff agreeing to incur the risk of non-
payment at maturity, is on the defendant.

If the note of a third party is received by the plaintiff from the de-
fendant, without recourse, in payment for goods sold by the former
to the latter, and is protested and not paid, the defendant is still
liable to the plaintiff for the goods if the note was so taken in
consequence of the false and fraudulent representations of the de-
fendant.

The existence of an agreement is a question for the jury; its validity
and effect are questions for the Court.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception*—Stated in the opinion of the Court.

*Second Exception*—At the trial the plaintiff offered the four following prayers:

1. That if the jury find that the plaintiff sold to the defendant one hundred and sixty tons and twelve hundred pounds of acid phosphate, upon the terms expressed in the two papers, dated June 15th, 1885, in evidence; that one of the said papers, purporting to be signed Thos. H. White & Co., was signed by the defendant, and was, by his authority, delivered to the plaintiff, and that the other of the said papers was written and signed on behalf of the plaintiff by Mr. Hatchtel, and delivered to the defendant, and that the said acid phosphate was subsequently delivered by the plaintiff to the defendant, and accepted by him; and shall further find that the promissory note of the Rialto Guano Company, endorsed by L. Seldner, mentioned in the said papers, was, on the said 15th day of June, 1885, delivered by the defendant to the plaintiff, and that at the maturity thereof, and before the commencement of this suit, the said promissory note was presented for payment, and was dishonored, and notice thereof and demand of payment sent to the endorser, as stated in the notarial protest in evidence, and that the plaintiff thereupon informed the defendant of the non-payment of the said note, and required of him to pay for the said phosphate, and that said promissory note is wholly unpaid, and that the plaintiff has offered to return the same to the defendant, then the plaintiff is entitled to a verdict in this case.

2. That if the jury find that the plaintiff sold to the defendant one hundred and sixty tons and twelve hundred pounds of acid phosphate, upon the terms expressed in the

two papers, dated June 15th, 1885, in evidence; that one of the said papers, purporting to be signed Thomas H. White & Co., was signed by the defendant, and was, by his authority, delivered to the plaintiff, and that the other of the said papers was written and signed on behalf of the plaintiff by Mr. Hatchtel, plaintiff's book-keeper, and delivered to the defendant, and that the said acid phosphate was subsequently delivered by the plaintiff to the defendant and accepted by him; and shall further find that the promissory note of the Rialto Guano Company, endorsed by L. Seldner, mentioned in the said papers, was, on the 15th day of June, 1885, delivered by the defendant to the plaintiff, and that at the maturity thereof, and before the commencement of this suit, the said promissory note was presented for payment, and was dishonored, and notice thereof and demand of payment sent to the endorser, as stated in the *notarial* protest in evidence; and that the plaintiff thereupon informed the defendant of the non-payment of the said note, and required of him to pay for the said phosphate, and that said promissory note is wholly unpaid, and that the plaintiff has offered to return the same to the defendant, then the plaintiff is entitled to a verdict in this case, unless the jury shall further find that an agreement was entered into between the plaintiff and defendant, that the plaintiff should accept the said promissory note of the Rialto Guano Company, endorsed by L. Seldner, in absolute payment for said acid phosphate, and run the risk of said note being paid, and the burden of proving such last mentioned agreement rests upon the defendant.

3. That if the jury find that the plaintiff was a body corporate, and that George B. Passmore was its general manager, and had charge of its business, and that the defendant carried on the business of a merchandise broker in the City of Baltimore, under the style of Thomas H. White & Co., and that the defendant in the character of a broker, went to plaintiff's office some days before the 15th of June,

1885, and there represented to said Passmore that the defendant had a note belonging to a western customer of his, who had authorized him to buy acid phosphate to its amount; that the said note was a note of the Rialto Guano Co., as maker, indorsed by Lippman Seldner, and that it had been taken for blood sold to said Rialto Guano Company; and shall further find that the defendant thereupon proceeded to negotiate with said Passmore, for the purchase from the plaintiff of the acid phosphate so required, and represented that the said Rialto Guano Company was perfectly good, and that said Passmore placed reliance upon said representations, and believed that defendant was acting for a third party in the transaction, and assented on behalf of the plaintiff to sell the said phosphate accordingly, and so informed the defendant by telephone, and that the defendant then sent his clerk, Mr. Stewart, to the office of the plaintiff, with the promissory note of the Rialto Guano Company, which is in evidence, and with the paper signed by the defendant, dated June 15th, 1885, also in evidence, and delivered the same to the plaintiff's bookkeeper, Mr. Hatchtel, the said Passmore not being then at said office, and that said Hatchtel remarked, upon the absence of a buyer's name in the said paper, and that said Stewart in reply said it was all right, and that he could charge the said phosphate to the defendant, and that said Hatchtel thereupon wrote, and signed and delivered to said Stewart the account and receipt, dated June 15th, 1885, purporting to be signed on behalf of the plaintiff, which is in evidence, and that said Stewart then took said last mentioned paper to the defendant, and that the latter received and retained the same; and shall further find that the quantity of said phosphate mentioned in the said papers was subsequently delivered by the plaintiff to the defendant, and accepted by him; and shall further find that the said Rialto Guano Company failed before the maturity of said note, and that the said note was not paid, but was

protested, as shown by the notary's protest in evidence, and never has been paid; and if the jury shall further find that the defendant, at the time of negotiating the said purchase of acid phosphate, did not really represent any third party, but was himself the principal in the transaction, and owner of the said promissory note; and shall further find that if the defendant's real relation to the matter of the said purchase had been known to the plaintiff, or its agents, the plaintiff would not have consented to take the said promissory note, and part with the said phosphate without obtaining the defendant's endorsement upon the said note; and shall further find that the plaintiff has offered to return said promissory note to the defendant, then the plaintiff is entitled to a verdict in this case for the price of the said acid phosphate so sold and delivered.

4. That if the jury find that the plaintiff sold to the defendant one hundred and sixty tons, and twelve hundred pounds of acid phosphate upon the terms expressed in the two papers, dated June 15th, 1885, in evidence; that one of the said papers purporting to be signed Thomas H. White & Co., was signed by the defendant, and by his authority was delivered to the plaintiff, and that the other of said papers was written and signed on behalf of the plaintiff by Mr. Hatchtel, and delivered to the defendant; and that the said acid phosphate was subsequently delivered by the plaintiff to defendant, and accepted by him; and shall further find that the promissory note of the Rialto Guano Company, endorsed by L. Seldner, mentioned in said papers, dated June 15th, 1885, if the jury find there was such a note, was on the said 15th of June, 1885, delivered by the defendant to the plaintiff; and further find that before said plaintiff had agreed to sell and deliver said acid phosphate under the terms of said papers, said defendant saw a certain George B. Passmore, and that he was the general manager of and for said plaintiff; and that said defendant requested him to sell and deliver for the

plaintiff said acid phosphate; and that to said G. B. Pass-more, said defendant stated as a fact, and of his own knowledge, that the Rialto Guano Company was perfectly good; and further find that said statement was false, and was made by defendant to induce plaintiff to sell and de-liver to defendant said acid phosphate, and that neither said Passmore, nor any other officer of plaintiff, (if the jury shall find that said Passmore was an officer of said plain-tiff, and that there were other officers of said plaintiff,) believed said statement to be false, but believed the same to be true, and did rely on it, and did sell and deliver to the defendant said acid phosphate; and further find, that at the maturity of said note of the Rialto Guano Company, and before the commencement of this action, the said note was presented for payment and dishonored, and notice thereof and demand of payment sent to the endorser, as stated in the notarial protest in evidence, and that there-upon the plaintiff informed the defendant of the non-pay-ment of the said note, and required of him that he should pay for the said acid phosphate, and that the said note is wholly unpaid, and that the plaintiff has offered to return the same to the defendant, then the plaintiff is entitled to a verdict in this case.

And the defendant offered the two prayers following:

1. If the jury shall believe that the contract between the parties to the suit was substantially an agreement to ex-change or trade phosphate for the promissory note of the Rialto Guano Co., endorsed by L. Seldner, offered in evi-dence, and nothing whatever was said or agreed between them as to recourse or non-recourse to the plaintiff upon said note in case of its not being paid, then the failure of the maker and endorser of said note, or either of them, and the comparative worthlessness of said note cannot affect the defendant's liability in this action, and the plaintiff is not entitled to recover, unless the jury shall believe that the plaintiff was induced so to take said note in exchange

or trade for said phospbate by untrue representations on the part of the defendant, on which the plaintiff relied, and had a right to rely.

5. Even if the jury believe that the Rialto Guano Company was insolvent on the 13th day of June, 1885, and shall further find that at said date the defendant represented to the plaintiff that it was solvent, the plaintiff is not entitled to recover by reason of any such representation, unless they find that such representation was falsely made for the purpose of practicing a fraud upon the plaintiff.

The Court (STEWART, J.,) refused the first and third prayers of the plaintiff, and granted its second and fourth prayers, and granted the defendant's first prayer, and also his fifth prayer in connection with the plaintiff's fourth prayer.

The plaintiff excepted. The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Arthur W. Machen,* for the appellant.

The principal question at issue was, what was the meaning of "settlement?" And counsel offered to show that the word had a commercial meaning from long commercial usage, and if there was such a meaning, the jury were certainly entitled to have it. The Court, however, even refused to hear any evidence as to the usage, and thus absolutely decided that the word "settlement" never could legally receive a commercial meaning from usage. *Hutchison vs. Bowker,* 5 *Mees. & Wels.,* 540–1; *Smith vs. Wilson,* 3 *Barn. & Adol.,* 732–3.

*A brief was also filed by Mr. Graham Gordon, of counsel for the appellant.

Usage may operate in one of two ways, either by introducing additional incidents into the contract, or by merely explaining and construing the words used. *Leake on Contracts*, 199; *Brown vs. Byrne*, 3 *El. & Bl.*, 715, 716; *Myers vs. Sarl*, 3 *Ell. & Ell.*, 306, 315; *Cuthbert vs. Cummings*, 10 *Exch.*, 815, *and* 11 *Ex.*, 405; *Leidemann vs. Schultz*, 14 *C. B.*, 50, 51; *Norden Steamship Co. vs. Demsey*, *L. R.*, 1 *C. P. Div.*, 659; *Drury vs. Young*, 58 *Md.*, 549, 556; *Appleman vs. Fisher*, 34 *Md.*, 540; *Powell vs. Horton*, 2 *Bing. N. C.*, 675; *Spicer vs. Cooper*, 1 *Q. B.*, 424.

The false and deceptious representation of *agency*, made by the defendant, induced the plaintiff to part with the goods as it would not have done had the truth been known. Any special arrangement (if such there was) limiting the plaintiff's right of recourse to the parties on the promissory note having been induced by the representation, was void for the fraud. The defendant nevertheless had obtained the goods and sold them, appropriated the proceeds to his own use; he was therefore liable upon the common counts, even if not liable according to the terms expressed in the agreement which the plaintiff was led into by the fraud.

In such a case the only "question is, whether the representation is so connected with the contract as to influence the mind of the party in making it." *Canham vs. Barry*, 15 *C. B.*, 617; *Leake on Contracts*, 377.

The defendant's studious concealment of the fact that he himself was the purchaser, was obviously intended for the very purpose, if possible, of escaping a responsibility which would justly attach to him as purchaser. The representations of a known broker who professed to occupy the relation of agent to both parties, and particularly to the seller—*stipulating for the receipt of a commission from him*—were well fitted to impose upon the latter. And but for the deceit, the defendant could not have obtained

the goods, without giving his own written obligation to pay for them.

When a false statement is made the presumption is that it had effect. *Pollock on Contracts*, 499; *Ex parte Kintrea, L. R.*, 5 *Chan.*, 101.

Had the plaintiff acquired knowledge of the facts in time, the phosphate, it seems, might even have been followed into the hands of a *bona fide* purchaser. *Kingsford vs. Merry*, 1 *Hurls. & Norm.*, 503; *Higgons vs. Burton*, 26 *Law Exch.*, 342; *Hardman vs. Booth*, 1 *Hurl. & Colt.*, 803; *Hollins vs. Fowler, L. R.*, 7 *H. L.*, 762. And see *Boulton vs. Jones*, 2 *H. & N.*, 564. But, however that may be, the plaintiff's right to hold the *defendant* liable for the value of the goods is clear. *Story on Agency, sec.* 264; *Downman vs. Jones*, 9 *Jur.*, 456 *and* 458; *Polhill vs. Walter*, 3 *Barn. & Ad.*, 122; *Meech vs. Smith*, 7 *Wend.*, 315; *Dusenbury vs. Ellis*, 3 *Johns. Cas.*, 70; *Keener vs. Harrod*, 2 *Md.*, 70; *Collen vs. Wright*, 8 *El. & Bl.*, 648; *Hoopes vs. Strasburger*, 37 *Md.*, 403.

Even for an innocent representation of agency, the person assuming to make it will be held responsible to the party who has been misled by it.

The motive or purpose of an untrue representation is not material, if the other party was misled by it, and it was such as might reasonably have that effect. *Polhill vs. Walter*, 3 *Barn. & Ad.*, 123; *Milne vs. Marwood*, 15 *C. B.*, 778; *Addison on Torts*, (5*th Ed.*,) 677.

*Henry C. Kennard*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The appellant, who was plaintiff below, was a body corporate, having been duly incorporated under the laws of Maryland; and the defendant below was doing business under the name of Thomas H. White & Company. The plaintiff was engaged in the manufacture and sale of

fertilizers, and one Passmore was its manager and trea-
surer. On the 13th of June, 1885, Thomas H. White
stated to Passmore that he had in his possession a promis-
sory note drawn by the Rialto Guano Company, payable
to their own order, and endorsed by Lippman Seldner.
He informed Passmore that this note was the property of
a western party, a customer of his firm, who had in-
structed him to purchase acid phosphate to the amount of
said note. He said that the standing of the Rialto Guano
Company was good and that the note was "all right."
On the 15th of June, 1885, the transaction was closed by
the delivery of the phosphate to the defendant from
whom the plaintiff received the said promissory note,
which was not, however, endorsed by Thomas H. White
and Company.

As evidence in the record is what is termed a sale note,
which is a memorandum or account of the sale and de-
livery of one hundred and sixty tons of phosphate, and
appended thereto is a receipt signed by Thomas H. White
& Co., and containing the following words:

"Terms: Settlement herewith by note of the Rialto
Guano Co. due Sept. 23rd, 26th, '85, payable to their own
order and endorsed by L. Seldner."

The promissory note of the Rialto Guano Co. presented
for payment at maturity, and not being paid, was pro-
tested; and subsequently an action of assumpsit was
brought against Thomas H. White & Co. for the price of
the goods thus sold and delivered. The verdict and judg-
ment being for the defendant, the plaintiff has brought
the questions involved in controversy into this Court by
an appeal.

The appellee contends that the promissory note was
taken by the plaintiff as absolute payment for the fer-
tilizers, and that the transaction was simply an exchange
of the goods for the note. There is a mass of conflicting
testimony; the plaintiff endeavoring to prove that the

note was not received as payment, unless it was paid at maturity; and the defendant seeking to show that the transaction was fully consummated by the transfer of the note or, in other words, that there was simply an exchange of paper for goods without further liability on the part of said defendant. The questions for determination, on this appeal, are presented by the exceptions taken by the plaintiff to the refusal of the Court below.to permit the introduction of testimony tending to prove that by a certain usage among the merchants of Baltimore, a peculiar meaning is attached to the word *settlement*, and to the rejection of its first and third prayers, and to the granting of the defendant's first and fifth prayers. It is conceded that the note of the Rialto Guano Co. was not endorsed by defendant, and has never been paid; both its maker and endorser having become insolvent before its maturity.

The plaintiff offered to prove by a witness that the word "*settlement*," as used in contracts for the sale of merchandise, has a recognized meaning in commercial usage in the City of Baltimore. He also offered to prove what such meaning is. The Court refused to admit the proof as offered; and its refusal forms the foundation for the appellant's first bill of exception.

It cannot be controverted that the principle has been established by adjudication that, "in commercial instruments and written contracts, the usage of a particular trade, profession or place" may be proved for the purpose of ascertaining the meaning of certain words, the signification of which may be doubtful. It is not to be denied that if a word has acquired a peculiar meaning in a certain trade or business, either local or general, that meaning will be applied to it in the construction of written instruments affecting the transactions growing out of that trade or business; but the fact that the word has acquired such meaning must be distinctly proved by the adduction

of satisfactory evidence. *Allegre's Adm'rs vs. Md. Ins. Co.*, 2 *G. & J.*, 137; *Taylor vs. Briggs*, 2 *Carr. & P.*, 525; *Murray vs. Hatch*, 6 *Mass.*, 465; *Coit & Pierpont vs. Commercial Ins. Co.*, 7 *John.*, 385.

And it is apparent that the tendency of the American decisions is to restrict, rather than to extend, the application of the principle first established by the sanction of judicial authority in England, and subsequently recognized and adopted in this country. In *Allen vs. Dykers*, 3 *Hill*, 597, NELSON, C. J., in delivering the opinion of the Court, said: "We are especially bound to refuse effect to any general or particular usage, when in direct contradiction to the fair and legal import of a written contract."

And in *Bolton vs. Colder & Wilson*, 1 *Watts*, 360, Chief Justice GIBSON of the Supreme Court of Pennsylvania, said: "Nothing should be more pertinaciously resisted, than these attempts to transfer the functions of the Judge to the witness' stand, by evidence of customs in derogation of the general law, that would involve the responsibilities of the parties in rules, whose existence, perhaps, they had no reason to suspect before they came to be applied to their rights. If the existence of a law be so obscure, as to be known to the constitutional expounders of it, only through the evidence of witnesses, it is no extravagant assumption, to take for granted, that the party to be affected was ignorant at the time when the knowledge of it would have been most material to him."

Many of the highest Courts in this country have decided that when the meaning of words is not ambiguous, proof of usage will not be received in the interpretation of contracts. *Macomber vs. Parker*, 3 *Pick.*, 170; *The Schooner Reeside*, 2 *Sumner*, 568; *McArthur & Hubbert vs. Sears*, 21 *Wend.*, 190; *Gage vs. Myers*, 26 *N. W. Reporter*, 525.

The citation of these cases has been introduced for the purpose of showing the tendency of American decisions in the direction already indicated.

In *Foley & Woodside vs. Mason,* 6 *Md.,* 50, it is said "that usages in general have fallen in later years, much into disfavor with the Courts, as they have been disliked and discountenanced in all times by the ablest of Judges." In that case it was proposed to show that there existed among the merchants of Baltimore a usage to deliver merchandise sold for cash without receiving the cash at the time of delivery, but this Court determined that evidence of such usage was inadmissible. It has been repeatedly decided that a usage must not be in restraint of trade; that it must not conflict with public policy and the law of the land, and that it must be reasonable and not productive of injustice in its practical operation. *Mitchell vs. Reynolds,* 1 *P. W.,* 181; *Bowen vs. Stoddard,* 10 *Met.,* 381; *Metcalf vs. Weld,* 14 *Gray,* 210.

In the Court below the plaintiff offered to prove the existence of a usage. There was an objection to this offer and the duty then devolved on the party making the offer, to distinctly state what was the usage. This duty was not performed, and it was simply an offer to prove that among the merchants in Baltimore some peculiar meaning was attached to the word *settlement.* It was not stated what that peculiar meaning was. The Court below was, therefore, without information in relation to the meaning intended to be proved as existing by usage; and a Court must know what a usage is before it can safely admit evidence of its existence; for if admitted without this information it might subsequently be discovered that it ought to have been excluded; the usage being in conflict with public policy, with the established law of the land, or unreasonable and unjust in its operation. The Court below was, therefore, right in rejecting the evidence as offered; but it must not be understood that we decide on this appeal that proof of usage is never admissible for the purpose of explaining the meaning of terms used in the formation of a contract. What we do decide is that such

evidence should be admitted with extreme caution, and never until the party offering it has distinctly stated to the Court what he intends to prove.

The second prayer of the plaintiff which was granted by the Court, when taken in connection with the defendant's first and fifth prayers, also granted, clearly and succinctly enunciates the law controlling this controversy. In the second prayer of the plaintiff the jury are told that the plaintiff is entitled to recover unless they find that the promissory note in question was taken in absolute payment; the plaintiff agreeing to incur the risk of non-payment at maturity, and that the burden of proof establishing such agreement is on the defendant. The plaintiff's first prayer ignores the possibility of the jury believing from the evidence that the note was taken in absolute payment, and was therefore properly rejected. The plaintiff's third prayer, which was rejected, tends to mislead the jury. It has been decided by this Court in *Phelan vs. Crosby*, 2 *Gill*, 462, that if the note of a third party is received in payment by the plaintiff from the defendant without recourse and is protested and not paid, the plaintiff is not entitled to recover unless the transfer was fraudulently made. The exposition of legal principles, applicable to evidence in relation to a fraudulent transfer of the note, asked for in this prayer, was clearly enunciated in the plaintiff's fourth prayer which was granted, and in the two granted prayers of the defendant. In one of these prayers the plaintiff asserts, and in the others the defendant concedes the right to recover in the action if the note was taken in consequence of the false and fraudulent representations of the defendant. These instructions were properly granted.

There is a special exception to the granting of the defendant's first prayer on the ground that it leaves to the jury the construction of an agreement in writing for the sale of the acid phosphate. But this prayer does not sub-

Susquehanna Fertilizer Co. *vs.* White & Co.

mit any written agreement to the jury for construction. The existence of an agreement to exchange acid phosphate for the promissory note is left for the finding of the jury on the evidence in the cause. The existence even of a written agreement is often dependent on genuineness of signatures and other facts which must be necessarily left for ascertainment by a jury. But an agreement entered into by parties may be valid or it may be *nudum pactum*, and its validity is a question to be determined by the Court. The proper functions of the Court have no relation to the finding of the facts upon which the formation of an agreement of this nature depends. It is its duty to determine whether it is binding on the parties and what are its legal operations on the interests involved in controversy. In this case the existence of an agreement to exchange phosphate for the promissory note was a fact conceded by the parties to the cause, and the Court simply instructed the jury upon the legal effect of such agreement upon the hypothesis of their finding certain facts really in dispute. It is clear that the Court, in granting the appellee's first prayer, did not disregard the line of demarcation which separates its functions from those of the jury, and require of the latter the performance of a duty which properly devolved on itself.

There being no error in any of the rulings of the Court below its judgment should be affirmed.

*Judgment affirmed.*