HENRY BECKER AND ALBERT AZINGER v. JOHN HALL et al., Appellants.

Ice on Public Waters: VALID APPROPRIATION. Actual possession of ice on public waters when fit to be cut, together with the present intention and ability to proceed at once to the harvest thereof, is necessary to constitute a legal appropriation thereof, and hence staking the banks of a stream before it has frozen, or marking, staking, or cleaning ice of insufficient thickness for harvesting, does not constitute a valid appropriation.

*Custom as evidence.* A custom that the act of staking ice off by itself on public waters was alone sufficient to constitute a legal appropriation is unreasonable and invalid, as in conflict with public rights.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

THURSDAY, DECEMBER 19, 1901.

ACTION in equity to restrain the defendants from interfering with the harvesting of ice formed on public waters. Trial, and judgment for the plaintiffs. The defendants appeal.—*Affirmed.*

*F. M. Ballenger* and *J. E. Craig* for appellants.

*James C. Davis* for appellees.

SHERWIN, J.—The ice field in controversy was located in the government canal at Keokuk. The canal is public water and the right to take ice therefrom is a common right. One member of the general public has the same right to the ice formed upon public waters as has another, until there has been an actual appropriation of such ice. *Brown v. Cunningham,* 82 Iowa, 517. What will amount to such an appropriation is the controlling question in this case, and the authorities are not in entire harmony thereon. It has been held "that an appropriation of ice upon these waters is made by surveying, marking, and staking off the ice, if unappropriated by others, and expending money to preserve it." Gould, Waters (3d Ed.) section 191; *Wood v. Fowler,* 26 Kan. 682 (40 Am. Rep. 330); *Hickey v. Hazard,* 3 Mo. App. 480. In *Hickey v. Hazard, supra,* the plaintiff had inclosed a field of ice with marked stakes, and by plowing around it, and had maintained constant possession until the ice was fit to harvest, when he and his men were driven

away, and the ice cut and taken by the defendant. It was
held that the plaintiff could recover for the ice. In the
Kansas case an injunction was asked restraining the de-
fendant from taking ice opposite and next to the plaintiff's
land. The question of priority of appropriation was not in-
volved. On the other hand, it is held in Massachusetts and
in Maine that the mere marking off or staking off of ice
fields does not constitute such an appropriation as will vest
the right to the ice. In *Barrett v. Ice Co.,* 84 Me. 155 (24
Atl. Rep. 802, 16 L. R. A. 774), the plaintiff was the lessee
of a portion of the shore of a great pond. In the fall he dug
a ditch from the pond to the upland for the purpose of float-
ing ice therein. On the night of January 27th following,
he run a line of marked stakes around the field he proposed
to harvest. He owned some tool and ice houses, which he
had not, however, used for several years. The defendant
was in the ice business, and had the year before cut the ice
on the same water. Late in the fall, but before the ice be-
gan to form, it cut out and removed the lily pads which were
in the pond; it kept the ice clear of surface water and of
snow, and had worked thereon before the plaintiff set his
stakes. About the last of January it went upon the pond
and commenced cutting and hauling ice therefrom, and con-
tinued to do so. An action of trespass was brought against
the company by the plaintiff. The court says: "The only
acts looking" towards an appropriation "were his digging
the ditch, his nocturnal erection of stakes and surveying,
and the written notice. He scraped no snow, he removed
no lily pads; he ignored the surface water; made no prep-
aration whatever to cut the ice, though 12 to 14 inches
thick." The action was dismissed. In *Peoples' Ice Co. v.
Davenport,* 149 Mass. 322 (21 N. E. Rep. 385, 14 Am.
St. Rep. 425), the plaintiffs scraped the snow from the ice,
and put down stakes to show where the lines were. They
then suspended operations for several days. The court says:
the plaintiffs "cannot   *   *   *   appropriate a part of the

pond by scraping it or setting up stakes and exclude the public therefrom. The ice, until it is cut, remains a part of the realty, and no one has any exclusive title to it. Upon the facts of the case at bar we are of opinion that the plaintiffs had no title to or possession of the ice cut by the defendant which enables them to maintain an action of tort in the nature of trover." See, also, *Rowell v. Doyle*, 131 Mass. 474. It is apparent from an examination of the authorities that no rule can be adopted that will exactly fit all cases, but we think there may be deduced from them a rule that will do substantial justice to all. We believe the true rule to be that there can be an appropriation of ice formed upon public waters only when the ice is fairly merchantable, and when he who seeks to appropriate it has the present intention and ability to proceed at once to the harvest thereof, and does so proceed with reasonable diligence. No rights can be acquired by staking the banks of a stream before it has frozen, as was done in this case by both parties; for, if such a rule were established, the public could be forever excluded from participation in such public benefits. Nor can the marking, staking, or cleaning ice not yet of sufficient thickness for harvesting amount to a legal appropriation thereof. In addition to all this, there must be actual possession of the field when fit to cut, coupled with the present intent and ability above stated. We find the facts to be in the case at bar that the plaintiffs were in actual possession of the field, and harvesting the ice, when interfered with by the defendants, and that the defendants had not, therefore, legally appropriated such ice.

A custom regarding the appropriation of ice along the Mississippi river is pleaded, and evidence introduced in support thereof. The evidence does not, in our judgment, support the plea; but, if it did, it would be clearly unreasonable, and in conflict with public rights, and for this reason should not be sustained. *Freary v. Cooke*, 14 Mass. 488; *Coal Co. v. Sanderson*, 94 Pa. 302

(39 Am. Rep. 785); *Dempsey v. Dobson,* 184 Pa. 588 (39 Atl. Rep. 493, 40 L. R. A. 550, 63 Am. St. Rep. 809); *Attorney-General v. Tarr,* 148 Mass. 309 (19 N. E. Rep. 358, 2 L. R. A. 87); *Easl Birmingham Land Co. v. Dennis,* 85 Ala. 565 (5 South. Rep. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73); *Susquehanna Fertilizer Co. v. White,* 66 Md. 444 (7 Atl. Rep. 802, 59 Am. Rep. 186); *Walker v. Transportation Co.,* 70 U. S. 150 (18 L. Ed. 172, 13 L. R. A. 438), note.

The judgment of the district court is AFFIRMED.