HUDSON RIVER ICE CO. v. BRADY.

(Supreme Court, Appellate Division, Third Department.   July 8, 1913.)

1. NAVIGABLE WATERS (§ 32*)—ICE—APPROPRIATION.

General Business Law (Consol. Laws 1909, c. 20) § 260, provides that, whenever the owner of land bordering upon the Hudson river shall require the ice formed in the river between the center thereof and the said lands for the purpose of filling an icehouse, he shall have the exclusive privilege of harvesting the ice so formed in front of said lands and between them and the center of the river, provided he indicates his intention so to do by staking out so much of the ice as is required. *Held*, that plaintiff could not invoke the protection of the statutes to claim ice staked out in a tributary of the Hudson river, which ice was not between the center of the river and the lands on which plaintiff's icehouse stood, and not in front of plaintiff's land.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

2. NAVIGABLE WATERS (§ 32*)—RIGHT TO APPROPRIATE—"FREE ICE."

All ice in navigable streams not included within that authorized to be appropriated by General Business Law (Consol. Laws 1909, c. 20) § 260, is sometimes called "free" ice, and does not belong to the adjacent riparian owners, but to the person who first appropriates it.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. NAVIGABLE WATERS (§ 32*)—ICE—APPROPRIATION.

The Hudson river being a navigable stream, the ice therein belongs to the first appropriator; the right to take it being owned in common with the public.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

4. NAVIGABLE WATERS (§ 32*)—ICE—APPROPRIATION—PUBLIC WATER.

Ice formed upon public waters can only be appropriated when the ice is fairly merchantable, and when the appropriator has a present intention and ability to at once harvest it and proceeds to do so with reasonable diligence, and a right of appropriation cannot be acquired by staking the banks of a stream before it has frozen.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

5. NAVIGABLE WATERS (§ 32*)—APPROPRIATION—SUFFICIENCY OF APPROPRIATION.

Plaintiff entered upon ice in front of lands belonging to others and had no icehouse upon the stream where the ice was frozen, and did not need the ice to fill any icehouse owned by him, and did no work in cultivating or marking the ice which was not merchantable. *Held*, that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff was not entitled to the ice by appropriation by merely placing sticks around it to indicate the field selected.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

Appeal from Special Term.

Action by the Hudson River Ice Company against Erastus E. Brady. From an order denying plaintiff's motion to vacate an ex parte order vacating an ex parte injunction order obtained by plaintiff, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Orin Q. Flint, of Athens, for appellant.
Osborn, Bloodgood & Wilbur, of Catskill, for respondent.

·HOWARD, J. Murderer's creek is a tributary of the Hudson river emptying into the Hudson river near the village of Athens. The creek is navigable at the point in question, and the tide ebbs and flows at that place. The plaintiff has an icehouse on the west bank of the Hudson at Athens. On February 8, 1913, when the ice was not less than four inches thick, the plaintiff caused to be marked and staked out a certain field of ice in Murderer's creek. At the place where the ice was so staked out the creek flows in part along lands owned by the plaintiff and in part along the adjoining lands of a third party. The complaint alleged that the defendant was, when the injunction was applied for, about to enter upon the ice staked out by the plaintiff in front of the land of the third party, and cut and remove the ice, and that this would cause irreparable loss to the plaintiff. An injunction was granted ex parte to the plaintiff; it was vacated ex parte on motion of the defendant; and a motion of the plaintiff, to vacate the latter order, made on notice, was denied. This is an appeal from the last order.

[1] Section 260 of the General Business Law (Consol. Laws 1909, c. 20) regulates to some extent the harvesting of ice on the Hudson river. So far as it is relevant to the controversy here it reads as follows:

"Whenever the owner or lessee of lands bordering upon the Hudson river shall require the ice formed in said river between the center thereof and said lands for the purpose of filling any icehouse now erected, or which may at the time of the formation of such ice hereafter be erected on any such lands adjoining the same, such owner or lessee of said lands and icehouses shall have the exclusive privilege of cutting and harvesting all the ice so formed in said river in front of and adjacent to said lands and between the same and the center of said river; provided such owner or lessee shall have indicated his intention of exercising such privilege by staking out so much of said ice as shall be required for said purpose, which said staking out shall not be required to be done until the ice has attained a thickness of four inches; and provided, also, such owner or lessee shall surround the cuttings and openings made with fences of bushes or other safeguards to warn all persons of such cuttings and openings."

It will be seen at once that this section gave no protection to the plaintiff in this instance, and gave it no right to the ice. The ice in

question was not in the Hudson river at all; it was not between the center of the river and the lands on which the plaintiff's icehouse stood; it was not in front of the plaintiff's lands; it was, in fact, in front of the lands of a third party. The statute in no manner refers to such ice as is described in the complaint, and therefore, under the statute, the field of ice staked out did not become privileged ice, and the plaintiff, under the statute, acquired no property in it or jurisdiction over it.

[2] The question then arises: Did the plaintiff by virtue of any other law acquire any rights to the ice? All ice in navigable streams not included within the provisions of the statute is sometimes called "free" ice. This ice does not belong to the adjacent riparian owners, but to the person who first peacefully appropriates it. "It may be regarded as the law of this state that the riparian owners upon navigable streams have no title to the ice which forms on such streams, as an incident to their ownership of the bank, but that the ice belongs to the first appropriator." Briggs v. Knickerbocker Ice Co., 11 Misc. Rep. 198, 32 N. Y. Supp. 96. "The state owns the Hudson river in trust for the use of the public. Apart from the statute about to be considered, the ice formed upon it, like the fish within it, becomes the property of the captor who first peacefully seizes it." Slingerland v. International Contracting Co., 43 App. Div. 224, 60 N. Y. Supp. 18.

[3] "The Hudson river being a navigable stream, the ice formed therein belongs to the first appropriator, and the right to take it is one owned in common with the public." Slingerland v. International Contracting Co., 169 N. Y. 72, 61 N. E. 998, 56 L. R. A. 494.

[4] In the case before us, did the plaintiff appropriate the ice? In this state there seems to have been no adjudication on the subject; no court having defined what constitutes an appropriation of free ice. There have been some expressions of opinion in other states. In Becker v. Hall, 116 Iowa, 592, 88 N. W. 325, 56 L. R. A. 574, the court said:

"It is apparent from an examination of the authorities that no rule can be adopted that will exactly fit all cases, but we think there may be deduced from them a rule that will do substantial justice to all. We believe the true rule to be that there can be an appropriation of ice formed upon public waters only when the ice is fairly merchantable, and when he who seeks to appropriate it has the present intention and ability to proceed at once to the harvest thereof, and does so proceed with reasonable diligence. No rights can be acquired by staking the banks of a stream before it has frozen, as was done in this case by both parties; for, if such a rule were established, the public could be forever excluded from participation in such public benefits. Nor can the marking, staking, or cleaning ice not yet of sufficient thickness for harvesting amount to a legal appropriation thereof."

In People's Ice Co. v. Davenport, 149 Mass. 322, 21 N. E. 385, 14 Am. St. Rep. 425, the court said:

"It is too well settled to be disputed that the property in the great ponds is in the commonwealth; that the public have the right to use them for fishing, fowling, boating, skating, cutting ice for use or sale, and other lawful purposes; and that the owners of the shores have no exclusive rights in them except by a grant of the Legislature. * * * The right to cut ice is common to all the public. The plaintiff has this right in common with the rest of the public, but it cannot by its own act appropriate a part of the pond by scraping it, or setting up stakes, and exclude the public from it."

It seems entirely clear if we are to follow the opinions quoted, and it seems clear as we view the subject ourselves that the acts described in this case cannot be held to constitute an appropriation.

[5] The plaintiff entered upon the ice in front of the lands of other persons; it had no icehouse upon the stream where the ice froze; it does not allege that it needed the ice to fill any icehouse which it owned; the ice was not merchantable; the plaintiff had done no work whatever upon it, no cultivating, no scraping, no marking, no ploughing—nothing. To hold that a person may acquire property in free ice, under such circumstances, would be to permit an appropriation of all free ice wherever found by merely sticking stakes around to indicate the field selected. Such a rule would enable a person to appropriate large fields of ice which he might not ever harvest; such a rule would exclude the general public from gathering free ice, frequently at times when it might be much needed; such a rule would be wholly repugnant to the idea of a common right and a common ownership in free ice. Such a rule, of course, can never be the law.

The order should be affirmed, with costs. All concur.