# J. AVERY BRYAN, Inc., et al. v. HUBBARD.—225 S. W. (2d) 282.

Eastern Section.   April 26, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

650

Joe V. Williams, Jr., and L. D. Miller, Jr., both of Chattanooga, for plaintiffs in error.

Gus A. Wood, W. N. Dietzen and Crawford Bean, all of Chattanooga, for defendant in error.

McAMIS, J. The plaintiff below, Tom Hubbard, filed this action against J. Avery Bryan Company, Inc., and Steve O'Rear to recover damages for personal injuries sustained when the plaintiff was struck by an ambulance owned by the corporate defendant and operated at the time by O'Rear. A trial before the court and a jury resulted in a verdict for $5,000.00 which was approved by the trial judge. The present appeal in error by the defendants followed.

The questions made by the assignments of error are: (1) that, under the undisputed evidence, defendants were guilty of no negligence but, if so, the plaintiff was guilty of proximate contributory negligence, (2) that the court erred in refusing to declare a mistrial because of the prejudicial and inflammatory statement made by counsel for plaintiff in his argument to the jury referring to the defendants as being "well-to-do", (3) the court erred in excluding evidence offered by defendants tending to show that it was customary in Chattanooga for pedestrians to cross the street only at street intersections and not in the middle of a bridge or street block and (4) the court erred in refusing to grant defendants a new trial because they were surprised by the testimony of the witness James G. Beavers.

The declaration alleges, under the common law count, that plaintiff, while exercising ordinary care and caution, was walking westwardly across Broad Street at the intersection of 29th and Broad Streets in Chattanooga and had reached the center of Broad Street where he was standing waiting for traffic to pass when he was struck by an ambulance belonging to the corporate defendant and operated by O'Rear as its driver and employee acting within the course and scope of his employ-

ment. The declaration charges that the ambulance was being operated at a fast and dangerous rate of speed and failed to cut either to the right or left of plaintiff to avoid striking him or to slow down when the driver saw or could have seen him standing in the center of the street.

In the second count of the declaration it was averred that the ambulance was being operated in violation of Chapter 82 of the Public Acts of 1931, as amended by Chapter 245 of the Public Acts of 1937, to wit: Sections 1 and 2; Sub-section B; Second, Third; Sub-section C; First, Second, and Sixth. The third count of the declaration charged a violation by defendants of Ordinance No. 1330, Article 9, Section 1, Book A-1, page 12 of the City of Chattanooga providing that no person shall operate or drive a vehicle in any street of the City at a rate of speed greater than is reasonable and safe, having regard to traffic, location, and safety and, in no case, at a speed exceeding 25 miles per hour; that the ambulance at the time in question was being operated at an unsafe and unreasonable speed, carelessly, negligently, and dangerously and in excess of 25 miles per hour.

Defendants filed a plea of not guilty and also special pleas averring, in substance, that plaintiff Hubbard was guilty of contributory negligence in attempting to walk across a bridge over Chattanooga Creek from one side to the other, in the middle of the bridge, instead of going to either end of the bridge or to the street intersection; that in thus crossing the bridge plaintiff violated the custom and general usage of long standing in Chattanooga and vicinity for pedestrians to cross only at street intersections and not to cross in the middle of a bridge. It was further averred by special plea that the plaintiff

himself was violating a City ordinance by being intoxicated to the extent that he lacked mental and physical capacity to protect himself from danger by observing traffic on the street, signals and warnings of the approach of vehicles and, especially, the siren of defendants' vehicle as it approached the point where plaintiff was undertaking to cross; that in so doing plaintiff was guilty of common law negligence and also a violation of Ordinance No. 253, Article 2, Section 682 making it a misdemeanor for any person to be drunk or in a state of intoxication upon any street to the annoyance of others.

The record shows that Broad Street runs North and South and is paved to a width of sixty feet with a bridge of equal width crossing Chattanooga Creek where plaintiff and one Delmar were standing as the ambulance approached from the north. Plaintiff testified that he and Delmar met on the east side of the bridge and, after the exchange of a few words, decided to cross from the east to the west side of the bridge; that before attempting to cross the street he, plaintiff, looked both ways but saw no traffic coming from either direction; that when he reached the center of the street he saw the ambulance coming from his right, i. e., from the north, at a speed of from 50 to 60 miles per hour; that Delmar continued across and reached safety on the west side of the bridge but that he, plaintiff, stopped in the middle of the street to allow the ambulance to pass.

Fred Alton, a witness for plaintiff, testified that he was working at a filling station 150 to 200 feet from the point where the accident occurred. It was his opinion that the ambulance was traveling 60 miles per hour. He testified that plaintiff was standing in the center of the

street. He says the ambulance before reaching plaintiff began "swaying" and attempted to pass between plaintiff and the east side of the bridge but did not succeed in doing so and struck him with the right front fender. James G. Beavers, another witness for plaintiff, testified substantially to the same effect. Delmar, plaintiff's companion, testified that the ambulance was traveling at about 50 or 55 miles per hour and struck Hubbard in the middle of the street. He denied that he saw any evidence that plaintiff had been drinking or was intoxicated.

W. L. Kampschafer, a police officer of Chattanooga, testified that he arrived at the scene of the accident only a few minutes after it occurred; that the weather was fair and that he found no skid marks; that he did not detect the odor of intoxicants on plaintiff's breath and the testimony of Alton, Beavers and the doctor who treated plaintiff following the accident tend to show that plaintiff had not been drinking. He positively denied that he was intoxicated.

O'Rear, driver of the ambulance, testified that he received a call to go to Trenton, Georgia, to get persons injured in a wreck at that place; that he was accompanied by Joe Kreis and, when about a half block north of the entrance to the bridge, he saw two men start from the east curb going across the bridge to the west side; that one of the men went on across the bridge but the other stopped and hesitated; that he then began to slow down and that when the ambulance was a few feet north of the man he suddenly ran across in front of it where he was struck on the west side of the bridge, that being the proper side for traffic going south. This witness testified that the siren was cut on when he left on the trip and remained on and that the red headlight was burning.

He says plaintiff was drinking and admitted the following day that he had been drinking. As to plaintiff's location at the time he was struck, O'Rear is corroborated by the witness McEntire and by Kreis, the attendant in the ambulance. Kreis also testified that plaintiff ran across in front of the ambulance after hesitating and taking a forward step and then pausing again as the ambulance approached.

Other evidence offered by defendants was to the effect that plaintiff had admitted following the accident that he was drinking and intoxicated.

■ From the foregoing it is apparent that the issue of plaintiff's intoxication was sharply drawn and that, on the evidence, the jury could have found either that he was or was not intoxicated. It is also apparent that the evidence is sharply conflicting as to whether plaintiff remained stationary or whether he moved back and forth in a manner to confuse the driver of the ambulance. The jury could find on material, substantial evidence that he remained stationary in the center of the street and that the ambulance passed to its left side of the bridge, striking plaintiff with the right front fender. There was also evidence, favorable to defendants, from which the jury could have found that plaintiff moved up to the center of the street, hesitated, took a step backward and then ran suddenly in front of the ambulance where he was struck while it was being operated on its proper side of the street. The jury and trial judge, as was their proper function, have chosen between these conflicting theories and have elected to find the issues in favor of the plaintiff and against the defendants. It is clear that there is material evidence to support a finding of negligence in the operation of the ambulance at a speed in

excess of that allowed by City ordinance and one which the jury may have concluded was excessive and dangerous in the business district through which the ambulance was passing.

It is strenuously and ably argued that plaintiff was guilty of proximate contributory negligence in attempting to cross the bridge in the face of oncoming traffic and in violation of Code, Section 2687 requiring pedestrians within a business or residential district at any point other than a pedestrian crosswalk or at an intersection to yield the right of way to vehicles.

We think these were all questions for the jury. If, as plaintiff testified, he looked both ways before leaving the east side of the bridge and saw no traffic, he would not be guilty of any negligence in attempting to cross; and if, as he testified, upon reaching the center of the street he saw the ambulance approaching from his right and stopped to allow it to pass on its proper side, it would appear that he obeyed the mandate of the statute and yielded the right of way. It is a matter of common experience for pedestrians in attempting to cross a broad street to find themselves suddenly exposed to traffic which they had not anticipated. It is then necessary either to stand still or run the gamut of passing vehicles. We cannot say that it is negligence as a matter of law for a pedestrian, caught in such a predicament, to remain standing rather than continue his course and run the risk of being struck.

Before closing our discussion of the insistence first made that the court erred in not directing a verdict for defendants, we think it proper to say that the driver of the ambulance does not contend, as we understand, that he was confused by the action of Delmar in continuing to

walk across the street after leaving plaintiff standing near the center. As we have seen, the testimony of the driver is that the condition resulted from the act of plaintiff in moving back and forth near the center of the street which, as has also been seen, plaintiff and his witnesses refute by their testimony.

■ Defendants' motion for a mistrial is based upon the argument by plaintiff's counsel: ''Now, gentlemen, it's up to you to decide what happened out there. On the one hand you have got this high class well-to-do defendant who says that . . .''

At this point counsel for defendants interrupted to object to the reference to defendants as ''well-to-do'' and to move for a mistrial. The motion was at first overruled but when counsel for plaintiff again made the same reference to defendants the court, upon objection, stated that if the reference to defendants was in connection with their financial standing and condition ''that's not an issue in this case.'' ''Well, proceed with your argument. But any reference to financial responsibility, sustain the objection to that.''

The reference to defendants as ''well-to-do'' was, of course, highly improper and objectionable as reflecting upon their ability to pay any judgment rendered in the case on trial. The term is generally considered as indicating prosperity, affluence or wealth. There was no proof on that question and it was not an issue in the case. Was its use inflammatory and prejudicial to the extent of entitling defendants to a new trial?

■ In general, control over the argument of counsel is lodged with the trial court which exercises a sound judicial discretion as to what shall and shall not be permitted in argument. Ferguson v. Moore, 98 Tenn. 342,

39 S. W. 341; Kizer v. State, 80 Tenn. 564; East Tennessee, V. & G. R. Co. v. Gurley, 80 Tenn. 46; Stone v. O'Neal, 19 Tenn. App. 512, 90 S. W. (2d) 548.

Generally the appellate courts will not interfere with the discretionary action of the trial court in refusing a mistrial or a new trial for misconduct of counsel in argument unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudice and sentiment which has not or cannot be removed by sustaining objection of opposing counsel, Pullman Co. v. Pennock, 118 Tenn. 565, 102 S. W. 73; Nashville Chattanooga & St. Louis Ry. Co. v. Mangrum, 15 Tenn. App. 518, or unless the appellate court finds affirmatively that it affected the result of the trial, Public Acts 1911, Chapter 32; Pullman Co. v. Pennock, supra; Lauterbach v. State, 132 Tenn. 603, 179 S. W. 130; Pearson v. State, 143 Tenn. 385, 226 S. W. 538; Petway v. Hoover, 12 Tenn. App. 618; Stone v. O'Neal, supra.

The remarks objected to in this case were only mildly inflammatory and the jury was finally instructed that the financial condition of the defendants was not an issue in the case. We think it entirely unlikely that the remarks would tend to influence the jury on the issue of liability and it is not seriously insisted that the verdict is excessive. There is an assignment to that effect but it is not supported by the brief and, under the familiar rule, may be considered waived. Counsel did not persist in using the term or indulge in other improper argument after the court ruled. We cannot say the trial court abused its discretion in ruling that the argument was objectionable only if it reflected upon defendants' financial condition. We cannot say from the record that it affirmatively appears that the error, if such it was, affected

the result of the trial and the assignment complaining of this action must be overruled.

In support of their plea that plaintiff was crossing in the middle of the block at the center of the bridge in violation of a general custom for pedestrians to cross only at street intersections, Mr. Bryan and the driver O'Rear testified that, for a great many years, it had been the custom in Chattanooga and Hamilton County for pedestrians not to "jaywalk" but to cross only at street intersections.

■ The effect of customs and usages often arises in connection with contractual relationships on the theory that the parties dealt in contemplation of known and accepted customs and, if ambiguous, the contract is to be construed in the light of prevailing customs and usages of trade. Evidence is competent to establish a certain, uniform and notorious custom of matters affecting the contract, Pennsylvania R. Co. v. Naive, 112 Tenn. 239, 79 S. W. 124, 64 L. R. A. 443, if, and only if, the custom relied upon is so notorious as to affect the general public with knowledge of its existence and raise the presumption that the parties dealt with the custom in mind or it is shown that the parties had actual knowledge of it. Cheek v. American Eagle Fire Ins. Co., 6 Tenn. App. 632.

■ The effect of usage and custom in the field of tort liability is more limited than in suits based upon contract. Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356; Becker v. Hall, 116 Iowa 589, 88 N. W. 324, 56 L. R. A. 573; Green Ridge R. Co. v. Brinkman, 64 Md. 52, 20 A. 1024, 54 Am. Rep. 755.

■ Customary conduct, though not conclusive or controlling, may be admissible on the question of negligence as furnishing a standarized gauge and as one circum-

stance to be weighed along with all others in determining whether or not ordinary care has been exercised. 38 Am. Jur., 1015, Negligence, Section 317.

Where a custom is relied upon, however, it should appear that the party against whom it is invoked had actual knowledge of it or that it has endured for such a long time and is so certain, uniform and notorious that a presumption arises that the public in general and the parties in particular knew of it. We think the proof in this case falls short of meeting this test. There is no proof that plaintiff knew of the custom or that it was so certain, uniform and notorious that a presumption of knowledge arises under the rule stated.

We find without merit the final insistence that defendants were surprised by the testimony of the witness Beavers. His testimony was within the pleadings in the case and we know of no rule that entitles a party litigant to the names of witnesses in advance of the trial.

We find no error and it results that all assignments are overruled and the judgment affirmed with costs.

Hale and Howard, JJ., concur.