FLORENCE LEMONS, Administratrix of the Estate of Mathilda Herndon, Deceased, Plaintiff-in-Error, v. MEMPHIS TRANSIT MANAGEMENT COMPANY and CHARLES LYNN JARRETT, Defendants-in-Error.
—413 S.W.(2d) 88.

Western Section. April 22, 1966.

Certiorari Granted by Supreme Court August 15, 1966.

Affirmed by Supreme Court and Opinion of Court of Appeals.

Adopted March 17, 1967.

738

Krivcher & Cox and Jerry F. Taylor, Memphis, for plaintiff in error.

Waring, Walker, Cox and Lewis, Memphis, for defendants in error.

AVERY, P.J. (W.S.). We have in this record two legal actions, filed at different times, one against each defendant but growing out of the same incident and against the employer and employee, consolidated and tried as one action.

Plaintiff's decedent, Mathilda Herndon, was killed while walking across Crump Boulevard when struck with a street bus, operated by an employee of Memphis Transit Management Company, one Charles Lynn Jarrett. The accident in which plaintiff's decedent was injured and in a few minutes thereafter died, occurred at the intersection of Somerville Street with E. H. Crump Boulevard, Carr and merging Lamar in the City of Memphis, Tennessee. E. H. Crump Boulevard from the west enters that intersection and merges with Somerville and Lamar, and from the point of intersection turn southeasterly and march together, that is, form one thoroughfare from the inter-

section in a southeasterly direction. Somerville entering the intersection is a four lane street, two for each direction from and into the intersection. Crump Boulevard entering the intersection from the west is a six lane thoroughfare, three in each direction. Each street is marked with a white center line, and each lane also marked with skip white lines, except Carr. U.S. Highways Nos. 51 and 78 also go through this intersection.

At the time of the accident the defendant, Memphis Transit Management Company, had its street bus No. 405 in repair operation test without passengers, driven by defendant, Charles Lynn Jarrett, one of its mechanics, traveling Somerville Street south toward the intersection above referred to, and it struck the deceased at a point shown by the proof and alleged in the pleadings and referred to in the Court's charge, as being about 20 feet south of the north curb of Crump Boulevard, and about 22 feet west of the west curb of Somerville Street.

The declaration in this case is in four counts. The first, a common law count which charges that the defendants, Charles Lynn Jarrett, was a mechanic, not a bus operator, and therefore not skilled in operating a passenger bus, all known to the defendant, Memphis Transit Management Company; that he acted in a willful, wanton, reckless and careless manner in the operation of the motor bus, showing complete disregard to the safety and welfare of others; that he was driving at an excess rate of speed under the conditions that existed; that he had full view of the deceased from the time he approached the intersection a block away; that if he did not see deceased he should have seen her by the exercise of reasonable care; that he should have seen her when she entered Crump Boulevard; he did not reduce the speed of the bus

until after he had struck deceased; he did not have it under proper control or attempt to bring it under control when the accident became eminent; that he was not maintaining a proper lookout ahead; that he did not apply his brakes in an effort to prevent the accident; he did not sound the horn to give warning of his approach; that he was negligent in his failure to turn to the left or stop so as to prevent striking the decedent; he did not devote his full attention to the driving and operation of the bus; he failed to yield the right-of-way to deceased who at the time and place of the accident was well within the proper crosswalk area for crossing E. H. Crump Boulevard at that intersection.

In addition to the allegations in the common law count, in Count II certain state statutes with respect to the regulations in crossing highways and streets were relied upon by the plaintiff, and violated by defendants, which will be referred to hereinafter with respect to duties of both pedestrians and their rights and the operation of motor vehicles along streets and at intersections both with marked and unmarked crosswalks.

Count III charges violation of several sections of traffic code of the City of Memphis, which will be referred to later, with respect to duties of parties and crosswalk areas.

The fourth count is a reiteration of the matters in the first count, and brings suit for punitive damages as well as compensatory damage, and is nothing more than a count on the theory that the doctrine of res ipsa loquitur applies. Plaintiff sues for $100,000.00 damages.

Defendants first filed pleas of not guilty and pleas of contributory negligence, and later on order of the Court, special pleas were filed by defendants.

Located at this intersection there appears to be two sets of traffic lights in operation directing the stops, starting, etc., by the usual signals.

Specific pleas filed aver that the operator stopped at the traffic light in accord with the proper signal, part of the bus then being practically even with the north curb of Crump Boulevard, and that when the traffic light turned for operator to proceed, he then entered the said intersection and turned right to go west on Crump Boulevard and was still within his turn and had passed the imaginary crosswalk on Crump Boulevard for pedestrians crossing from the east or west, and that when he had practically completed his turn, the deceased, without any warning, walked into the right side of the area of the front doors of the defendant's bus; that the operator defendant applied his brakes and stopped immediately. It is averred that the bus was in good operating order and that the operator was giving his proper attention to vehicles and pedestrians lawfully upon the roadway; that the bus was being operated in a lawful manner at the time and place and the operator had no notice or knowledge that deceased would walk into the side of the bus.

The pleas further aver that it was the negligent and careless conduct of deceased by acting in the manner as stated, walking into the side of the bus, and at the time she did so, she was guilty of contributory negligence in that she failed to walk within the crosswalk, and that her failure to do so was the direct and proximate cause of her death. The pleas aver the deceased was not in the crosswalk nor in the area of the crosswalk at the time she collided with the bus; that the bus was stopped immediately and all assistance was rendered by the operator to the deceased, and that she did not suffer, but that she was

unconscious from the moment she was hit and until she died.

An additional plea is that she had a heart attack and that the heart attack resulted in her death and not from the injury received when she came into the side of the bus, and the pleas categorically deny each allegation of negligence set forth in the declaration.

As to the second count they deny the bus was operated in violation of any of the statutes set out in the declaration; aver again negligence on the part of deceased in that she violated the state law with respect to failure to walk within the safety zone of the crosswalk.

The plea as to Count III avers defendants did not violate any of the Traffic Code Sections of the City of Memphis, and avers that deceased violated the Memphis Traffic Code, and sets out the sections wherein it alleges she violated them, one of which is, she was not within the crosswalk or in a space which would constitute an unmarked crosswalk.

The case was tried in Division III of the Circuit Court of Shelby County, Honorable William B. Leffler, Judge, to a jury. The case was tried on April 6, 1965. At the conclusion of the plaintiff's proof defendant moved for directed verdict, which was overruled, and at the conclusion of all the proof both defendants and plaintiff moved for directed verdicts which were overruled, and jury returned its verdict for defendants and judgment entered in accord therewith. Exceptions were saved by plaintiff and motion for new trials filed and heard on May 6, 1965, overruled, exceptions saved, appeal prayed, granted and perfected to this Court, where the case was heretofore heard, taken under advisement and disposed of by this

opinion. Unless the respective name of the defendant is specifically stated herein, the parties will be referred to by the designation "defendants" and "plaintiff" and "deceased", as in trial Court.

The first seven assignments of error will be discussed together because they are levelled at alleged errors:

1—The failure of the Court to direct a verdict against the defendants on the theory they were guilty of negligence as a matter of law.

2—In failing to direct a verdict on the theory that the plaintiff was not guilty of any proximate contributory negligence.

3—There was no evidence to support a verdict.

4—The verdict was contrary to the weight and preponderance of the evidence.

5—The verdict of the jury is against the law.

6—The jury was permitted to speculate by its verdict.

7—The Court erred in charging the jury as to the matter of contributory negligence.

It should be said here that plaintiff introduced a greater part of defendant Jarrett's deposition taken on discovery, as part of her evidence in chief and read the discovery deposition as shown in the record.

The above seven assignments will be discussed together. There were no eye witnesses to this accident. As heretofore referred to this intersection is a sort of a circular intersection, constituting about a 25 degree circle, regardless of whether the circle is referred to in Somerville Street, Crump Boulevard or Lamar Avenue.

Thus it is, that when the evidence undertakes to locate an unmarked crosswalk therein, it being admitted there was no marked crosswalk for deceased to occupy at the time of the injury, is rather tedious to positively locate the proper unmarked crosswalk area, and in this case, in addition to the photographs, map etc. the evidence with respect to exactly where deceased was at the time she came in contact with the bus, must be arrived at by circumstantial proof. That is, so as to determine whether she was in an area which could be defined as a crosswalk, so as to give her the benefit of the presumption that she was acting with proper care for her own safety.

At the time deceased was wearing a black coat, which has been filed as evidence in this record, and there is a tear on the left side of that coat beginning just below the armpit of the coat and extending to some 18 inches of the bottom of the coat, ending at about the knee location of the coat.

The record in this case, shown by aerial photographs of the involved intersections and the adjacent areas and oral evidence, reveals that the deceased lived on Linden Avenue, but does not reveal how she came to the involved intersection on the morning that she met her death. It is purely speculative how she did come, but she was accustomed to using the street busses for her transportation. The record indicates she was on her way to a dentist for some tooth repair. There is nothing to indicate if she did come all the way or part of the way on the bus, where she left such bus. So far as the proof is concerned she was first seen as she fell, after the collision, by defendant Jarrett through some portion of the front doors in the right side of the bus. At that time she was out in the street, as hereinbefore stated, and was crossing Crump

Boulevard at some point in that intersection. Deceased could have approached the corner on the walk along the west side of Somerville, or she could have approached the corner of that intersection on the north side of Crump. There is a Gulf Oil Company service station in the corner of that intersection north of Crump, and east of Somerville. That which is certain from the proof in this record is that the bus was turned right from Somerville and in turning or traveling west on Crump, that she came from some point on that corner, and as she walked, she and the bus collided.

Much is asked about a bus stop on the south side of that intersection and Crump Boulevard, but there is no satisfactory proof which locates it so that it can be observed by any of the photographs exhibited. At that intersection and at the place where witnesses marked parallel red lines and sectional blue lines across Crump Boulevard, it is 96 feet wide. There was no designated within lines crosswalk on either of the streets which entered into and formed any portion of that intersection.

There is no passenger bus stop shown or proven to be on Somerville or Crump at that intersection, and the defendant bus operator said he was turning or had turned into the second traffic lane from the curb on north side of Crump. If that be true, that portion of the bus was 20 feet from that street curb. The bus doors on that side near the front are passenger entrance doors.

It is certain, in accord with the testimony in this case, that the deceased never got any further than 20 feet from the north curb of Crump Boulevard. Whether she walked that whole distance or was dragged a part of that distance by the bus after she had come in contact with it, can not be determined from this proof, as a definite fact. How-

ever, it would be a natural conclusion to assume that with the bus making the turn that the proof shows it was making, and with the body at the position where the proof shows it was in the street, the bus making an effort to go west and she making an effort to go south, there would be some movement of the body after the collision. Which direction no one can say, for it is not shown the angle of the bus nor can it be assumed what angle it had, if any, in making that turn.

Assuming that the body was 20 feet out in the street when the collision occurred and that the bus was making a turn from Somerville to its right or west into Crump, there was room enough between where the body fell and the curb on the right to have furnished passageway for the bus. Furthermore, there was 76 feet at least from that point to the south side of Crump within the intersection, so that the bus could have gone, if driven in such a manner, to the left of where the body was located or to the right thereof. Operator of bus states positively that he never saw the deceased at any point until after the collision, and immediately when he heard a thud on the side of the bus, and with that statement by him both on the stand and in his discovery deposition, which was introduced as a part of the proof of the plaintiff, the jury could well have found that he was not keeping a lookout ahead, for had he been, and had this lady been standing at or walking toward the corner from which he approached, there was nothing to prevent him seeing her, except the fact that, as stated by him, he was not looking and seeing what he should have seen. At the same time, if she was in a position as she crossed the street where either the laws of the State or the City Ordinances forbid her to be in her effort to cross, she herself was in violation of the law in doing it, and if the street bus had stopped

at the traffic light with its front end even with the corner curb, as testified to by the operator, and the lady was standing on the corner at that time, she should have seen that bus and not have gone into that street. In addition to that the "go signal" from the traffic light was the same for this pedestrian as it was for the operator of the bus, like as was the stop signal of the traffic light. Thus it is, that regardless that one may have been violating the law by failure to keep a lookout ahead and other was violating the law by failure to see what she ordinarily should have seen, and was not within the crosswalk, then it was a question for the jury to determine which violation of the laws of the State or of the City Ordinance, permitted to go to the jury, constituted the proximate cause of the collision and injury.

On the proof shown by the record, the jury could have found that either one of the parties was guilty of such negligence as constituted the proximate cause, or as told by the Court in his charge, could have found each one of the parties,—deceased and employee bus operator, either or both, guilty of such negligence which constituted part of the proximate cause so that there could be no recovery.

It is the duty of this Court in considering a motion by either party for directed verdict, to give consideration only to the facts proven in support of the party against whom such contention is made, and all reasonable inferences to be drawn therefrom, disregarding all countervailing evidence, and if there is any competent, persuasive or controlling evidence in the record from which the minds of reasonable men might differ, a verdict can not be directed.

Furthermore, when the jurors have the facts, as they had in this particular case, and where motions had

been made for a directed verdict by both or each of the parties, that is, plaintiffs and defendants, if there be any competent and controlling evidence to support that verdict, it must be sustained in the absence of other error which may have affected the verdict.

In support of the rules set out in each of the above paragraphs, we have made that statement very plain in Spence v. Carne, 40 Tenn.App. 580, 590, 292 S.W.2d 438, 442, 443, and other decisions of this and the Supreme Court therein referred to.

In the original pleadings, both declarations and pleas, each of the parties had relied upon certain sections of the laws of the State and of the Traffic Code of Memphis.

A careful examination of the record clearly shows that the plaintiff in Count III of its declaration has relied upon Section 1661.1, 1751 and 1752.7, together with certain other sections of the Memphis Traffic Code, but from the statement in the general charge of the Court, regardless of what the Court might have said about these sections during the actual introduction of the testimony, the Court said with respect to these particular ordinances, though the record indicates otherwise at some point, it would appear the Court permitted the jury to have the following:

"Section 59-810. Traffic-Control Signal Legend. Whenever traffic is controlled by traffic-control signals exhibiting the words 'Go', 'Caution' or 'Stop', or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to drivers or vehicles and pedestrians as follows: (a) Green alone or 'Go':

"1. Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.

"2. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

"Section 59-836. Drivers to Exercise Due Care. Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon the roadway.''

The Court permitted the following City Ordinances to be read to the jury by the plaintiff-in-error:

Section 1661 dealing with the matter of signals:

"Green alone, or 'Go': (a) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to either vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited. (b) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

"Section 1752.7. Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall exercise proper precaution upon observing any child or confused or incapacitated person upon a roadway."

Section 1661.1 was allowed over objection of defendant and is a City Code Ordinance.

All of the above Sections and City Ordinances were read on behalf of the plaintiff.

The following Sections were stricken, to which exceptions were saved by plaintiff:

"Section 59-706.—Operators of School Buses and Common Carriers—Licensing. (a). No person who is under the age of twenty-one (21) years shall drive any motor vehicle while in use as a school bus for transportation of pupils to or from school, nor motor vehicle while in use as a public or common carrier of persons or property, nor in either event until he has been licensed as a chauffeur and received a special chauffeur's license."

"Section 59-858. Reckless Driving.—(a) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

After the above Sections were stricken and to which plaintiff saved exceptions, the following took place with reference to City Ordinance 1751:

"MR. WARING: And 1751, I move that be stricken as not being applicable.

THE COURT: All right. I am going to sustain that.

MR. KRIVCHER: I agree to that."

Notwithstanding this agreement, this Ordinance 1751 was read into the charge of the Court as applicable to each party.

The Court, over objection of defendants, allowed 1752.7 read and as applicable:

"Section 1752.7. Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall exercise proper precaution upon observing any child or confused or incapacitated person upon a roadway."

"MR. WARING: I move that be stricken, because that refers to the provision of this section, and there is no other provision plead.

THE COURT: I am going to let that stay in notwithstanding the provision.

MR. WARING: There is nothing for it to refer back to.

THE COURT: Well, I am going to let it stay in.

MR. KRIVCHER: You want me to read the word 'provisions' and strike the words 'of this section'?

THE COURT: Yes, that won't be applicable.

MR. KRIVCHER: All right.

MR. WARING: O. K., that is all for now."

After the reading of the above Code Sections and Memphis City Code Sections, the plaintiff's proof in chief was closed.

"MR. WARING: If the Court please, I would like at this time to read those sections of the State Statutes

and City Ordinances that I have set out in my Pleas."
He then read the following:

"T.C.A. Section 59-834. Pedestrians' right-of-way in
crosswalks.—(b) No pedestrian shall suddenly leave
a curb or other place of safety and walk or run into the
path of a vehicle which is so close that it is impossible
for the driver to yield.

"Section 59-835. Crossing at other than crosswalks.—
(a) Every pedestrian crossing a roadway at any point
other than within a marked crosswalk or within an
unmarked crosswalk at an intersection shall yield the
right-of-way to all vehicles upon the roadway.

"Section 59-835. (c) Between adjacent intersections at
which traffic-controlled signals are in operation pedes-
trians shall not cross at any place except in a marked
crosswalk."

City Code Sections were read as follows:

"MR. WARING: Section 1752 reads: 'Every pedes-
trian crossing a roadway at any point other than within
a marked crosswalk or within an unmarked crosswalk
at an intersection shall yield the right-of-way to all
vehicles upon the roadway'.

"Section 1752.2. 'Between adjacent intersections at
which traffic control signals are in operation pedes-
trians shall not cross at any place except in a marked
crosswalk.' "

"The Defendants rest."

After this occurred there was some discussion between
counsel and the Court about adjourning and returning
the next morning, and the procedure, following which the

jury was returned, having been out of the room for sometime.

Memphis City Code No. 1751, which was carried into the Court's charge, is as follows:

"Section 1751. Pedestrians' Right-of-Way in Crosswalk.—When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield to the pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway within a crosswalk upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle, which is so close that it is impossible for the driver to yield."

Thereafter, certain special requests were offered, which will be referred to hereinafter. Those by the plaintiff are all overruled, but Request No. 1 by the defendant was said to be in the general charge, and at that point the jury was brought back, and the Court began and read his general charge. After which the Court said:

"Gentlemen, are there any further Special Instructions?"

There was a conference at the Bench out of the hearing of the jury, and Mr. Krivcher said:

"If the Court please, regarding the City Ordinance 1751, which was stricken from the plaintiff's Declaration, I believe it was read by the defendant in reading his Special Pleas, and I respectfully request the Court

to advise the Jury that we do not rely on it, nor is it applicable, that having been Your Honor's ruling yesterday, by which we were prevented from reading it, so we could not have relied on it if we did not read it. It was stricken, and it was read by Mr. Waring."

Further attention was called to the Court that he did not mention that part of the theory of the defendants' lawsuit where the Special Plea that the death was due to heart attack, also a question about whether the Court had charged effect of remote contributory negligence upon the verdict. All the special requests were again denied. Whereupon, the Court, at that time gave the special request of Mr. Waring, and said to the jury:

"THE COURT: Gentlemen, I am going to give you this additional instruction, but in giving it to you I give it to you not for your consideration apart from the other instructions. Do not give it any more force than you would any other instruction, but consider it along with the aggregate instructions heretofore given to you.

"I charge you, Gentlemen of the Jury, that if you find the deceased, Mrs. Herndon, was not exercising due care for her own safety in failing to yield the right-of-way, as she was required to do by Statute, then there is no presumption that she was exercising due care for her own safety."

The eighth assignment of error is as follows:

"The Court erred in refusing to allow R. B. Lee, a witness on behalf of the plaintiff, to testify as to custom and usage with regard to where he and others had crossed the street in question. The rejection of such evidence did not afford the Jury the opportunity to

consider whether or not the decedent was within the unmarked crosswalk, as same was established by custom and usage.''

The evidence objected to in an effort on the part of counsel for plaintiff to have Mr. Lee, who had crossed this intersection many many times and was a mail carrier for many years, having been shown a photograph, Exhibit 2 to plaintiff's proof and having identified that photograph as a picture of the intersection involved where he had crossed Crump Boulevard five days each week, for several years and during which time he had seen pedestrians going each way across Crump Boulevard at that intersection,—to locate the unmarked cross-walk across this circular intersection to be where public custom establishes it for two purposes: (1) to show substantial compliance with the definition of an ''unmarked crosswalk'' as defined in City Ordinance, and (2) to show a circumstance to be weighed, with others, in determining whether deceased had exercised ordinary care in her effort to cross said street.

Plaintiff relies for his contention that you can locate the route used by the public, as a general custom on J. Avery Bryan, Inc. v. Hubbard, 32 Tenn.App. 648, 225 S.W.2d 282.

This is an opinion by Presiding Judge McAmis. He had under consideration an accident which occurred between a pedestrian and a motorist on a bridge. The pedestrian was violating the law by not walking along the left side of the bridge facing oncoming traffic, but it was shown in that case that he was walking in the usual and customary place where the public walked in crossing over that bridge. Counsel for plaintiff in the instant case in support of his contention, cited the statement of Judge McAmis

in which, after discussing customs relative to contracts and as related to torts, relied upon Pennsylvania R. Co. v. Naive, 112 Tenn. 239, 79 S.W. 124, 64 L.R.A. 443, and said:

"[T]he custom relied upon is so notorious as to affect the general public with knowledge of its existence and raise the presumption that the parties dealt with the custom in mind or it is shown that the parties had actual knowledge of it."

He then said:

"The effect of usage and custom in the field of tort liability is more limited than in suits based upon contract." Citing Grand Trunk R. Co. v. Richardson, 91 U.S. 454, 23 L.Ed. 356; Becker v. Hall, 116 Iowa 589, 88 N.W. 324, 56 L.R.A. 573, and other decisions of our Court.

"Customary conduct, though not conclusive or controlling, may be admissible on the question of negligence as furnishing a standarized guage and as one circumstance to be weighed along with all others in determining whether or not ordinary care has been exercised." Citing Am. Jur. 1015, Negligence, Section 317, and then said:

"Where a custom is relied upon, however it should appear that the party against whom it is invoked had actual knowledge of it or that it has endured for such a long time and is so certain, uniform and notorious that a presumption arises that the public in general and the parties in particular knew of it. We think the proof in this case falls short of meeting this test. There is no proof that plaintiff knew of the custom or that it was

so certain, uniform and notorious that a presumption of knowledge arises under the rule stated.''

While we think that in the case considered by Judge McAmis as it related to absolute unquestionable crossing by pedestrian over a bridge on side forbidden by law, is the correct rule. The question arises: ''Is that true at a busy street intersection where it is shown that thoroughfares enter that intersection with business houses on each side of the intersection and constituting a circular situation within the thoroughfare itself? It was not shown that the deceased ever had any notice of that, but the implication is from Judge McAmis' opinion, that whether the deceased had such knowledge of it or not, it was such a public matter, and counsel for plaintiff was undertaking to prove that at this particular location on that circular type intersection, people had been crossing the street at the point where this lady was found, for at least during the period of years since the postman, who was the proffered witness, had operated over that intersection daily for many years. It may be that the streets have been widened and other conditions existed at the time of the accident and in the pictures we have before us, but there is nothing in the proof to show that it hadn't been there all of these years.

█ It seems to us that with such definitions that we have in our statutes and city ordinances dealing with marked crosswalks, and with unmarked crosswalks, and the definition that has heretofore been referred to in the opinions of our Courts and the definition in the Memphis City Code of an unmarked crosswalk extending across the street as if the full width of the walk from curb to curb extended across the street, and if the curb along the outside of the grass plot is to be considered a curb of

the street or a curb of the walk, then this crosswalk would be 10 feet wide, as we see the situation, or at least the public could have so understood it to be, and we think the jury should have had this evidence for the reasons as stated in the opinion of J. Avery Bryan, Inc. v. Hubbard, supra, constituting not only the knowledge where the public regarded the area of the crosswalk at that peculiar type of intersection, for the purpose of showing that the deceased was within or substantially within that area, and if not for that, was competent to be weighed along with other determining factors, as we will point out later in this opinion in the determination of the exercise of ordinary care on the part of the deceased.

To us, the real question is, does the fact that the Court overruled that testimony, furnish such proof as we might find as a fact, did affect the verdict of the jury?

The defendants rely upon our opinion of the Court prepared by Judge Carney in the case of Fortune v. Holmes, 48 Tenn.App. 497, 348 S.W.2d 894, in which we were dealing with the necessity of persons who operate riding academies to furnish gentle animals to the customers who paid for the services to be rendered, in which we said: "The customary way of doing a thing may be a negligent way."

In an opinion by the late Judge Hale, in dealing with an operation of the city as it related to a park slide for children, in which case the father of his child sliding down the face of the slide with child between his legs, was injured; offered proof that this was the ordinary way and manner that such was conducted, the jury was warranted in finding a verdict in favor of the father. The evidence of custom was not permitted to go into the proof because the record failed to show what the answer was or would

have been in the case, and if answered, would have been cumulative. We do not think the riding academy furnishing gentle horses to customers paying for same, nor the park slide case govern care or negligence of a person in the case before us on facts revealed by the record, when struck by a bus at this circular intersection.

This brings us now to assignments of error IX and X, and in giving consideration to these combined assignments of error, we first refer to assignment No. X, in which it is said:

"The trial Court erred in including in its charge the defendants' reliance on the definition of a crosswalk as set forth in the Memphis City Ordinance Section 1641, which Ordinance was not applicable to the facts of this case due to the unique design and engineering of the 'intersection'."

The Court said, after having quoted certain of the City Ordinances relied upon by each party:

"In addition to that, the City Ordinances which have been heretofore read to you, the Court feels it should read to you a definition contained in the City Ordinance which, I think, has been read to you, also, but the Court will read it now in the event it has not and it defines a crosswalk under Section 1641 in the supplement of the Traffic Code of the Memphis Digest as, 'That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the street measured from the curbs, or in the absence of curbs, from the edges of the traversible roadway. B. Any portion of this roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the

surface', so I give that to you because it will be incumbent upon you, Gentlemen of the Jury, to define this crosswalk in this case."

■ We think it would have been much plainer if he had said, after using the words "defined crosswalk", that he meant the width of a crosswalk from the beginning point of which one could lawfully leave the intersection and proceed to walk into the street, that is, whether it was 10 feet wide, and its full length 96 feet. Perhaps it would have been clearer to the jury if the Court had used the word "locate" rather than the word "defined". While the Ordinances define what an unmarked crosswalk is, it was the duty of the jury to locate the crosswalk so defined by the Ordinance on the street or intersection involved, not only to locate it, but to determine whether or not the definition given by the City Code is applicable to the particular location involved.

We must relate also the charge of the special request by the defendant to the language of the Court in explaining what he meant by charging the jury the language of Section 1641 as above stated. This assignment of error No. IX which was levelled at a special request of the defendant, we think, taken in connection with assignment of error No. X, quite likely confused the jury. The Court said:

"I charge you, Gentlemen of the Jury, that if you find the deceased, Mrs. Herndon, was not exercising due care for her own safety in failing to yield the right-of-way, *as she was required to do by Statute,* then there is no presumption that she was exercising due care for her own safety." (Emphasis added)

So it is the insistence of counsel for plaintiff that these two assignments of error amount to nothing more or less than saying to the jury that the defendant was entitled, under the facts as revealed at the trial, to a directed verdict, or to say that the woman was guilty of being at a place which she was not legally permitted to be, and therefore, guilty of such contributory negligence under the *statute,* that she could not recover, regardless of other statutes which the Court did not explain.

We think the argument made in respect to these two assignments is especially appropriate because the Court refused to give certain statutes as plead in the declarations, and which were clearly applicable if the Court was going to give the charge as complained of in assignments of error Nos. IX and X. That argument is so pointed we think it should be put into this opinion, and is as follows:

"1. The charge as rendered was not a correct statement of the law.

"2. The charge as requested and given makes no mention of which Statute is referred to, and thereby is confusing and misleading in that it is a mandatory instruction that the decedent was required to yield the right-of-way to the defendant driver of the bus without regard to any other circumstances.

"3. The charge as requested and given leaves no determination to the Jury as to whether or not the decedent was within or outside the crosswalk at the time of the accident.

"4. Both the State Statutes, T.C.A. 59-834; 59-835(a) and the City Ordinances require that certain other determinations be made prior to a determination as to whether or not a pedestrian is required to yield the

right-of-way to a vehicle. This was not included in the charge.

"5. The charge as requested and rendered did not include an instruction with regard to the defendant driver and his duty as an approaching motorist or an instruction that if he had the right-of-way what bearing this might have on what was required of him by ordinary care. The charge did not include the fact that he was not relieved of the duty of maintaining a reasonable lookout for pedestrians within the 'intersection' or between the 'intersections', or the fact that he must anticipate the presence of pedestrians at street crossings. Plaintiff's Special Request No. 5 for Charge to the Jury was tendered to the Court at the end of the general charge and refused, and such special request would have added clarification to the charge complained of.

"6. The Court was further in error by rendering this instruction to the Jury in that the instruction demands that if the decedent failed to yield the right-of-way, that the presumption that she was exercising due care for her safety should not be considered. Since there was no direct testimony that the decedent failed to yield the right-of-way, the only way the Jury could reach this conclusion would be by a presumption that the decedent failed to yield the right-of-way. The Court should then have charged the Jury as to conflicting presumptions, and was in error for failing to so charge.

"7. The charge as requested by defendants and rendered by the Court was in error in that the charge presupposes that the plaintiff's decedent was outside the crosswalk, and the question of whether or not the decedent was outside the crosswalk was determined by the Court as a conclusion of fact, based on its charge.

In essence, the charge was in effect a peremptory instruction to the Jury, demanding that it find the plaintiff's decedent guilty of proximate contributory negligence. This question was not a question for the Court, but rather for the Jury, especially in view of the Trial Court's action in overruling all motions for directed verdict made by both the defendants and plaintiff.

"1. The convergence of the streets herein involved was unique in engineering and design. The 'intersection' in question is not a normal intersection of four streets intersecting at right angles. At this particular 'intersection', E. H. Crump Boulevard enters from the west, and as it extends through, becomes known as Lamar Avenue, and Lamar Avenue then branches out in a southwesterly direction. Somerville Street enters from the north and does not extend southwardly beyond E. H. Crump Boulevard, but ends, or culminates, as it enters E. H. Crump Boulevard and Lamar Avenue. There is no extension of Somerville Street beyond the south side of E. H. Crump Boulevard and Lamar Avenue. Immediately adjacent or next to the south side of E. H. Crump Boulevard is the housing project known as Lamar Terrace and there is a continuous sidewalk on the south side of said street, running from a west to southwest direction. Carr Avenue enters the intersection from the east.

"2. At the place in question, there is not the existence of 'connections of lateral lines' of the sidewalks on opposite sides of the street from the northwest corner of E. H. Crump Boulevard and Somerville Street to the south side of E. H. Crump Boulevard. There was no continuance of the sidewalk on the south side of said

'intersection' running in the same direction as the sidewalk on the northwest corner of E. H. Crump Boulevard and Somerville Street, as is referred to in the definition of crosswalks and as was charged to the Jury.

"3. Further, the Court was in error by charging the Jury with regard to this definition, in view of the fact that no proof was adduced as to where the decedent was crossing the street or her intended and actual path of travel at the time of the impact. Therefore, in the absence of this, the presumption that she was exercising due care for her own safety and self preservation also must include the fact that she was walking within the proper crosswalk area at the time of the accident."

We adopt the essence of this argument as a part of this opinion.

It is not permissible to select a clause out of context from a charge of the Court and determine it to be error, without relating it to the whole charge, but on the question of the presumption that prevails in behalf of a pedestrian, the Court, at page 418 had said:

"A pedestrian, under the common law, when using streets, must proceed in the exercise of reasonable and ordinary care. Now, there is a presumption, arising out of instinct of self-preservation, that a decedent was in exercise of ordinary care when fatally injured, prevailing until this presumption is overcome by competent evidence, and which may prevail where there are no eye witnesses or any direct testimony as to the conduct of the decedent and until this is overcome."

He also had said:

"Now, in this case, Gentlemen of the Jury, aside of the question of negligence of the defendant you will also

have a question of negligence of the deceased at the time of the accident.

"The law as to the burden of proof with reference to contributory negligence is that the burden of proof is upon the defendants to show that the deceased was guilty of contributory negligence, but if the evidence of the plaintiff and her witnesses, or the defendants and their witnesses or both taken together raises a presumption that the deceased was guilty of contributory negligence, that is guilty of an act or acts of negligence which directly and proximately contributed to the death, then it is the duty of the plaintiff to overcome that presumption by showing that the deceased at the time was in the exercise of that degree of care that the law puts upon her."

He also called attention to and read Section 1641 of the City Code, which he said defined a crosswalk, though it does not appear that Section 1641 was ever read to the jury, except in the charge of the Court, unless it is construed responsive as evidence in the examination of the City Engineer, Fosnaugh, at R. p. 264, and the Court said:

"* * * I give that to you because it will be incumbent upon you, Gentlemen of the Jury, to define this crosswalk in this case."

The same language as used by the Court as the contents of 1641 had been read by counsel to said City Engineer, who was asked:

"Q—* * * would you define that intersection, or would you say if that was a perfect intersection, or if not, why not—if I make it clear?"

The whole question seemed to be confusing, and the Court stated:

"As I get it, he is asking if that is a continuation of the sidewalk coming across the street.

A—There is a sidewalk on the south side of Lamar parallel with Lamar, but there is no sidewalk that would resemble a continuation of the sidewalk along Somerville on the north side of the intersection."

After completing the whole charge, he gave this Special Request of the defendant:

"I charge you, gentlemen of the Jury, that if you find the deceased, Mrs. Herndon, was not exercising due care for her own safety in failing to yield the right-of-way, as she was required to do by Statute, then there is no presumption that she was exercising due care for her own safety."

■■ The "presumption of due care" is not evidence, but will serve in the place of evidence until prima facie evidence has been introduced by the opposite party.

" 'Presumption of due care' means that whatever facts party would have to prove in order to show due care, if burden were on him to show it, are taken as true without any proof being offered." Whiteaker v. Mo. Pac. R. Co., Mo.App., 15 S.W.2d 952.

In Morris v. Chicago, M., St. P. & P. R. Co., 1 Wash. 2d 587, 97 P.2d 119, the Supreme Court of Washington, in determination of this question of the doctrine of contributory negligence and also of the presumption of due care, said:

"This presumption [of due care] entirely disappears from the case upon the introduction of competent and material testimony of disinterested witnesses, as to

the actions of the deceased immediately prior to and continuing up to the time of the accident, and where such testimony is introduced, the presumption should in no event be submitted to the jury.''

There are other definitions of this presumption of due care in many cases throughout the country. In Tenn. Central R. Co. v. Herb, 134 Tenn. 397, 399, 183 S.W. 1011, the Supreme Court said:

''This court has ranged itself with the large majority of the tribunals of this country in holding that, where a plaintiff's contributory negligence does not appear from the proof adduced by him, the burden to show its existence rests on the defendant.'' Citing Stewart v. City of Nashville, 96 Tenn. 50, 33 S.W. 613; Burke v. Citizens Street Railway Co., 102 Tenn. 409, 52 S.W. 170.

We too, without citing further authorities, have said in many cases that a fact may be proven from circumstances, and from that fact inferences may be drawn. What are the circumstances as shown by this record as relates to this particular decision? Deceased came to that corner, she was there and was a pedestrian. She waited for that traffic light to give her the right-of-way. It did so. She started and had gone approximately 22 feet. It was the duty of the defendant Jarrett to see all that could be normally seen. There was nothing to obstruct his view. He admitted he didn't look to his right, and admitted if he had he would have seen her. He admitted that he stopped at that intersection, and says he waited for his traffic light to come on, which would have given her the same right to cross the street that he had to start his bus.

As we read these issues together regarding the alleged negligence of the plaintiff with respect to her occupancy

of this crosswalk at time of collision, we feel the jury construed the statements of the Court and this special request to mean that the Court was of the opinion that plaintiff was violating the "statute" and City Code, and was not exercising due care for her own safety in failing to yield the right-of-way, and therefore not entitled to the presumption that she was exercising due care for her own safety and was guilty of contributory negligence. When the whole charge is read together with this special request, and the City Code definition of an unmarked crosswalk, having been told they must "define" it, the jury was so confused that they could not disabuse their minds of the fact that the defendant did not owe deceased the care set out in the statutes and shown by special request No. 5 of plaintiff, which the Court refused to charge, and give her the presumption of exercising due care for herself. Further consideration will be given this last statement as related to remaining assignments of error.

Assignments of error Nos. 11, 12, and 13, are levelled at the alleged error of the Court in failing to charge plaintiff's special request Nos. 2, 3 and 5 as follows:

*"Special Request Number 2.*

"I further charge you, that if the injury and subsequent death of Mrs. Herndon occurred on account of coming in collision with an obstruction which the driver of the bus saw, or might have seen if he had been looking in a proper direction, or which he might have avoided by the exercise of reasonable and ordinary care and skill, and prompt use of all the means in his power, the defendants would be liable."

*"Special Request Number 3.*

"I further charge you that the defendant bus company is also bound for a due application on the part of its servants or drivers of the necessary attention, art, and skill, and if the injury and subsequent death to the deceased, Mrs. Herndon, might have been avoided by the exercise of reasonable and ordinary care and skill on the part of the driver of the bus, the defendant, Charles Lynn Jarrett, then both the company and its driver are liable."

*"Special Request Number 5.*

"I further charge you gentlemen of the jury as follows:

"So also while the fact that an approaching motorist has the right-of-way may have a bearing on what is required of him by ordinary care, he is not relieved from the duty of exercising due care not to injure others who may be crossing the street. He must anticipate the presence of pedestrians not only at street crossings, but between street intersections and must exercise due care to avoid injuring them."

These three assignments will be considered together with assignment of error No. 14, which simply says: "The Trial Court erred in failing to grant the plaintiff's motion for a new trial."

As to the special requests Nos. 2 and 3 set out in the assignments of error of the plaintiff Nos. 11 and 12, we think the general charge reasonably covers them.

As to assignment of error No. 13, in view of the fact that the Court did charge defendants' special request hereinabove set out, it is our opinon that had he charged special request No. 5 of plaintiff as shown by assignment of error No. 13, hereinbefore copied, we could not have

affirmatively found that such affected the verdict of the jury. The error of charging special request of defendants and failing to charge special request No. 5 of plaintiff. compounded the errors and did affect the verdict of the jury.

With further reference to assignment No. XIII we think the testimony of Mr. Lee was competent and if deceased was crossing the street at the point where it had been so consistently crossed from year to year, it was a question for the jury to determine, under the peculiar circular intersection involved, whether it had become a matter of custom for pedestrians to use the area in which the plaintiff was struck, as an extended unmarked crosswalk, so that it had become a matter of public knowledge.

We are of the opinion that when the Court charged that special request of the defendants, it was not a complete statement of the law applicable to the facts of this case and that plaintiff was deprived of the right to rely upon the presumption of reasonable care to which we feel she was entitled under the proper charge, makes it necessary for us to sustain assignments of error Nos. XIII, IX, X and XIV. Assignment of error Nos. I-VII, inclusive, and XI and XII are overruled.

In view of the facts set out in this record, referred to in this opinion and the peculiar description of this intersection, we feel constrained to set aside the verdict of the jury, judgment of the Court and that a new trial should be granted. Therefore, the case is remanded to the Circuit Court of Shelby County, there to be retried in accord with the law and the opinion filed herein. It is so ordered, and the cost of the case in this Court will be taxed to the defendants and the cost in the lower Court

heretofore accrued and hereafter which may accrue, will be adjudged by that Court in its final judgment.

Enter judgment accordingly.

Carney, J., concurs.

Bejach, J., dissents.

BEJACH, J. (dissenting).

In this cause, I respectfully dissent from the majority opinion reversing the judgment of the Circuit Court of Shelby County, Tennessee, based on a jury verdict for the defendants approved by the trial judge.

All of the errors assigned, which are sustained by the majority opinion as grounds for reversal of the cause, if errors they be, are, in my opinion, harmless errors under the provisions of section 27-117, T.C.A. For that reason, it is my opinion that all of plaintiff in error's assignments of error should be overruled and the judgment of the lower court dismissing the cause should be affirmed.