IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 24, 2010 Session

## DUANE MCCRORY
v.
## ANTHONY TRIBBLE and CYNTHIA TRIBBLE

Appeal from the Circuit Court for Shelby County
No. CT-004082-05    Kay S. Robilio, Judge

No. W2009-00792-COA-R3-CV - Filed April 22, 2010

This is a premises liability case. The plaintiff worker allegedly injured his knee while in the defendants' home. The plaintiff visited a doctor the next day, and ultimately had surgery on the knee the next month. Subsequently, the plaintiff sued the defendants, alleging premises liability. A jury trial was held. After the testimony concluded, the trial court declined to include a jury instruction requested by the plaintiff. During closing arguments, the plaintiff's attorney started to read from a deposition that had not been entered into evidence; the trial court sustained a timely objection. Also during closing argument, the closing remarks of the defendant's attorney alerted the plaintiff's attorney to the fact that a particular medical record was not a part of the evidence submitted to the jury. While the jury was deliberating, the plaintiff sought to reopen proof to admit into evidence the omitted medical record; the trial court declined to reopen the proof. The jury returned a verdict for the defendants. The plaintiff filed a motion for a new trial, which was denied. The plaintiff now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Thomas D. Yeaglin, Memphis, Tennessee, for the Plaintiff/Appellant, Duane McCrory

Nicholas J. Owens, Jr., Memphis, Tennessee, for the Defendant/Appellees, Anthony Tribble and Cynthia Tribble

# OPINION

## FACTS AND PROCEEDINGS BELOW

At all times pertinent, Plaintiff/Appellant Duane McCrory ("Mr. McCrory") was a heating and air conditioning technician employed by a heating and cooling company in Memphis, Tennessee. On August 5, 2004, he went to the home of Defendant/Appellees Anthony Tribble ("Mr. Tribble") and Cynthia Tribble (collectively "the Tribbles") in response to an air conditioning service call. The Tribbles had purchased the home approximately ten months earlier, in October 2003.

To perform the required service work, Mr. McCrory only needed access to the air conditioning unit outside the Tribbles' home. At some point, Mr. Tribble asked Mr. McCrory to show him how to change the filter for the air conditioning unit. This required Mr. McCrory to go up a folding stairway into the attic in the Tribbles' home.[1]

The flooring in the Tribbles' attic was comprised of wooden boards that were not nailed down. In the attic, the filter for the air conditioning unit was approximately six to eight feet away from the stairway entrance. As Mr. McCrory walked across the attic to where the filter was located to demonstrate how to change it, one of the floor boards flipped up, causing Mr. McCrory to lose his balance and stumble.[2] At this time, Mr. McCrory says that he twisted his knee and sustained an injury. Mr. McCrory did not tell Mr. Tribble that he was injured; he went back down the attic stairway, completed the service call, and left the Tribbles' residence.

That night, the twisted knee caused Mr. McCrory significant pain. The next day, on August 6, 2004, Mr. McCrory visited the Desoto Family Medical Clinic to have his knee examined. He was referred to an orthopaedic surgeon, James Varner, M.D. ("Dr. Varner").

Two weeks later, on August 20, 2004, Mr. McCrory saw Dr. Varner. Dr. Varner recommended surgery to address Mr. McCrory's knee injury. Dr. Varner performed the recommended surgery at the end of September 2004. For the next two months, Mr. McCrory had physical therapy. After missing four months of work, Mr. McCrory returned to his job in a limited capacity in December 2004.

---

[1]The parties' testimony differs on whether Mr. Tribble went into the attic with Mr. McCrory or remained standing on the stairway looking into the attic while Mr. McCrory demonstrated how to change the filter.

[2]The parties' testimony differs on whether Mr. McCrory stumbled while walking from the stairway or while returning to the stairway.

On August 1, 2005, Mr. McCrory filed the instant lawsuit against the Tribbles. In the complaint, he alleged that the Tribbles were aware that the attic floor boards were unsecured, and that this was a dangerous condition. He sought $100,000 in damages. In the Tribbles' answer, they denied the allegations. Discovery ensued.

As part of the discovery, Mr. Tribble was deposed. In his deposition testimony, Mr. Tribble allegedly admitted that, prior to the incident, he was aware that the attic floor board on which Mr. McCrory stumbled was loose. A transcript of Mr. Tribble's deposition was filed in the trial court.[3]

The attorney for the Tribbles had discovery requests served on Mr. McCrory's medical service providers, including the Desoto Family Medical Center. In its response to the discovery request, the Desoto Family Medical Center did not include any record documenting Mr. McCrory's visit on the day immediately after the accident, August 6, 2004.

After receiving the medical records produced under subpoena, the attorney for the Tribbles provided copies of them to Mr. McCrory's attorney in August 2008. Ultimately, the parties stipulated to Mr. McCrory's reasonable and necessary medical expenses, totaling $14,867.39, as well as Mr. McCrory's medical records. Neither stipulation mentioned Mr. McCrory's August 6, 2004 visit to the Desoto Family Medical Center.

In February 2009, the trial court conducted a jury trial over two days. Among others, the jury heard testimony from Mr. McCrory and Mr. Tribble. Four exhibits were entered into evidence, including the stipulated medical records and expenses.

In his testimony, Mr. McCrory claimed that he injured his knee in the Tribbles' attic when a floor board flipped up and caused him to stumble. The next day, he said, he visited the Desoto Family Medical Center to have the knee examined. Ultimately, he had surgery on the knee, he said, and missed several months of work recovering from the surgery.

Mr. Tribble testified in his own defense. In his testimony, Mr. Tribble claimed that he was not aware of any loose floor boards in the attic prior to Mr. McCrory's injury. He admitted that the floor boards were not nailed down, but nevertheless believed that the boards were secure because they were flush and were held down by the weight of the water heater in the attic. Although Mr. Tribble was cross-examined on this point, Mr. McCrory's attorney did not utilize his allegedly inconsistent deposition testimony, in which Mr. Tribble purportedly conceded that he was aware of a loose floor board in his attic.

---

[3]The appellate record does not include a transcript of Mr. Tribble's deposition.

At the conclusion of the testimony and prior to closing arguments, the trial court conducted a hearing on the jury instructions. Mr. McCrory's attorney sought to include the first paragraph of Tennessee Pattern Jury Instruction 9.06 ("T.P.I. 9.06"), which states:

> When an *[owner] [or] [occupant]* of property remains in control of the premises where work is being done, the *[owner] [or] [occupant]* has a duty to use ordinary care in managing the property to avoid exposing the employees of a contractor or subcontractor to an unreasonable risk of harm.

T.P.I. 9.06.[4] The trial court declined to do so, apparently on the basis that T.P.I. 9.06 was not applicable because Mr. McCrory was not performing work in the Tribbles' attic when he was allegedly injured. Instead, the trial court opted to use Instructions 9.01, 9.02, and 9.07 in the jury charge, stating:

> One who owns, occupies, or leases property is under a duty to use ordinary care, which is the care that ordinarily careful persons would use to avoid injury to themselves or others under the same or similar circumstances.
> There is no duty to guarantee the safety of those entering upon the property. Consider all the surrounding circumstances in deciding if the defendant used such care.
> To recover for an injury caused by an unsafe condition of the property, the plaintiff must show the defendant either created the unsafe condition or knew of it long enough to have corrected it or given adequate warning of it before plaintiff's injury, or that the unsafe condition existed long enough that the defendant using ordinary care should have discovered and corrected or adequately warned of the unsafe condition.
> An unsafe condition is a condition which creates an unreasonable risk of harm. An owner or occupier of property who maintains an inherently dangerous instrumentality upon the property does not guarantee the safety of others, but is required to use due care appropriate to the hazards arising from

---

[4]The second paragraph in T.P.I. 9.06 states:

> When the contractor has complete control of the premises where the accident occurred and the *[owner][occupant]* retains no control of that part of the property *[except to the extent of determining if the work is being performed according to the contract]*, the *[owner][occupant]* owes no duty of care to the employees of the *[contractor][subcontractor]*.

Mr. McCrory's attorney did not seek to have this second paragraph included in the jury instructions.

the dangerous instrumentality. The duty of due care cannot be avoided by delegating the duty to a contractor or subcontractor.

Thus, the trial court instructed the jury that the Tribbles were under a duty to use ordinary care to avoid injuring Mr. McCrory.

After the trial court charged the jury, the parties' attorneys made their closing arguments. During his closing argument, Mr. McCrory's attorney reminded the jury that Mr. Tribble had told them that he did not know the floor boards were loose. He then attempted to read to the jury Mr. Tribble's deposition testimony, in which Mr. Tribble allegedly admitted that he knew the floor boards were loose. Not surprisingly, the Tribbles' attorney immediately objected on the grounds that the deposition testimony had not come into evidence during the trial. The trial court sustained the objection, and Mr. McCrory's attorney concluded his closing argument without further referring to Mr. Tribble's deposition testimony.

The attorney for the Tribbles then made his closing argument. He first reminded the jury that Mr. McCrory had claimed that he was injured in the first week of August 2004 and had seen a physician the next day. The Tribbles' attorney then pointed out that, despite Mr. McCrory's assertion, the medical records admitted into evidence showed that Mr. McCrory's first visit to a physician occurred over two weeks later, and that the medical expenses Mr. McCrory sought did not include payment of any expenses associated with an earlier visit. Apparently, until the Tribbles' attorney made these statements in his closing argument, neither Mr. McCrory nor his counsel were aware that the DeSoto Family Medical Center records produced did not include the record of Mr. McCrory's initial visit on August 6, 2004.

At the conclusion of closing arguments, the jury retired to deliberate. As the jury began its deliberations, Mr. McCrory called the DeSoto Family Medical Center to inquire about the missing medical records. He was told that the August 6 records had been inadvertently overlooked and that he could pick up a copy the next day. Mr. McCrory's attorney brought this information to the trial court's attention and asked the trial court to reopen proof to allow him to admit into evidence the omitted medical record. The trial court declined to do so.

After deliberating for approximately twenty minutes, the jury returned and the foreperson announced the verdict. After considering the proof, the jury found that the Tribbles' conduct was not the legal cause of Mr. McCrory's injury. On February 9, 2009, the trial court entered an order granting judgment in favor of the Tribbles.

Subsequently, the Tribbles filed a motion for discretionary costs, and Mr. McCrory filed a motion for a new trial. In his motion for a new trial, Mr. McCrory argued that the trial court erred by refusing to reopen proof for admission of the omitted medical record, refusing to

allow Mr. McCrory's attorney to read Mr. Tribble's deposition testimony in his closing argument, and declining to include T.P.I. 9.06 in the jury instructions. The motion for a new trial was denied and the Tribbles were awarded discretionary costs. Mr. McCrory now appeals.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Mr. McCrory raises the following issues:

1) Whether the trial court erred in refusing to charge the jury with the first paragraph of T.P.I. 9.06;
2) Whether the trial court erred in sustaining the Tribbles' objection to Mr. McCrory's reading to the jury a portion of Mr. Tribble's deposition testimony;
3) Whether the trial court erred in refusing to allow Mr. McCrory to reopen his proof to present a copy of the omitted medical report;
4) Whether the trial court erred in denying Mr. McCrory's motion for a new trial, considering all of the foregoing and the obvious fact that Mr. McCrory had not received due justice and a fair trial under the above questioned circumstances which had occurred only by mistake and certainly not by anyone's intended conduct.

Our standard of review for the trial court's decisions pertaining to the jury charge is well established.

> We review the jury charge in its entirety and as a whole to determine whether the trial judge committed reversible error. We will not invalidate a charge if it "fairly defines the legal issues involved in the case and does not mislead the jury." Further, it is not error for a trial court to deny a requested instruction if its substance has already been included in other portions of the charge. "Where the court correctly charges the law applicable to the case, it is not error to deny a special request that embodies a theory of a party if the court charges in general terms and with clearness sound propositions of law which would guide the jury in reaching a correct decision in the case." We will not reverse a trial court unless the failure to give a requested charge "more probably than not" affected the judgment.

***Miller v. Choo Choo Partners, L.P.***, 73 S.W.3d 897, 908 (Tenn. Ct. App. 2001) (citations omitted).

The remaining issues raised on appeal are reviewed under an abuse of discretion standard. *See Thacker v. Ball*, No. E2006-01876-COA-R3-CV, 2007 WL 1836846, at *5 (Tenn. Ct. App. June 27, 2007), *no perm. app.* ("The grant or denial of a new trial is discretionary with the trial judge, and cannot be relied on as ground for reversal unless an abuse of discretion is shown." (citing *Esstman v. Boyd*, 605 S.W.2d 237 (Tenn. Ct. App. 1979))); *McGeehee v. Davis*, No. M2002-03062-COA-R3-CV, 2004 WL 66686, at *2 (Tenn. Ct. App. Jan. 15, 2004), *no perm. app.* ("[I]t is within the trial judge's discretion whether to reopen the proof for further evidence and that decision will not be disturbed absent a showing of injustice or an abuse of discretion." (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991))); *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991) ("In general, control over the argument of counsel is lodged with the trial court which exercises a sound judicial discretion as to what shall and shall not be permitted in argument." (quoting *J. Avery Bryan, Inc. v. Hubbard*, 225 S.W.2d 282, 287 (Tenn. Ct. App. 1949))).

## ANALYSIS

Mr. McCrory first argues that the trial court erred in declining to include T.P.I. 9.06 in the jury charge, allegedly based on the trial court's erroneous impression that the entire instruction would have to be given, and the second paragraph was inapplicable to the facts of this case. Mr. McCrory contends that, in the absence of T.P.I. 9.06, the jury was not instructed as to the duty a landowner owes to a worker on the premises. He maintains that T.P.I. 9.06 consists "of two paragraphs that [are] literally independent in thought and effect."

"We review the jury charge in its entirety and as a whole to determine whether the trial judge committed reversible error." *Miller*, 73 S.W.3d at 908 (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *Grissom v. Metro. Gov't of Nashville*, 817 S.W.2d 679, 685 (Tenn. Ct. App. 1991)). Jury instructions "do not have to be perfect in every detail." *Goodale v. Langenberg*, 243 S.W.3d 575, 584 (Tenn. Ct. App. 2007) (citing *Wielgus v. Dover Indus., Inc.*, 39 S.W.3d 124, 131 (Tenn. Ct. App. 2000)). "We will not invalidate a charge if it 'fairly defines the legal issues involved in the case and does not mislead the jury.' " *Miller*, 73 S.W.3d at 908 (citing *Otis*, 850 S.W.2d at 446; *Grissom*, 817 S.W.2d at 685).

Here, the trial court instructed the jury that the Tribbles, as landowners, were under a duty to use ordinary care to avoid injury to those entering the property. While the jury charge may not have specified that Mr. McCrory was a worker, jury instructions need not "be perfect in every detail." *Goodale*, 243 S.W.3d at 584 (citing *Wielgus*, 39 S.W.3d at 131). After reviewing the jury instructions as a whole, we cannot conclude that the instructions misled the jury or failed to "fairly define[] the legal issues involved." *Miller*, 73 S.W.3d at 908

(citing **Otis**, 850 S.W.2d at 446; **Grissom**, 817 S.W.2d at 685).  Accordingly, we find no error in the trial court's decision not to include T.P.I. 9.06 in the jury instructions.

Mr. McCrory next argues that the trial court erred by prohibiting his attorney from reading the deposition testimony of Mr. Tribble during closing argument.  He contends that the deposition testimony significantly contradicted Mr. Tribble's trial testimony, and that the trial court's decision left the jury with a false impression of Mr. Tribble's credibility.  Citing **Thompson v. Clendening**, 38 Tenn. (1 Head) 287 (1858), Mr. McCrory contends that "matters discovered late in time can be excluded in the Trial Judge's discretion unless they involve a very serious and material issue of credibility."  Mr. McCrory asserts that the statements in Mr. Tribble's deposition were "very important" and "totally contradicted" his testimony on the witness stand.  In support of his argument, Mr. McCrory points to Rule 32.01(2) of the Tennessee Rules of Civil Procedure[5] and insists that it "clearly provides that any party to a lawsuit may use the discovery deposition of the opposition party for any purpose and there is no limitation whatsoever as to that wholly unrestricted use."

Here, it is undisputed that Mr. Tribble's deposition was not entered into evidence at trial.  Further, it is undisputed that Mr. McCrory's attorney did not impeach Mr. Tribble on cross examination with the portion of the deposition at issue.

Rule 32.01 of the Tennessee Rules of Civil Procedure gives wide latitude in the use of the deposition testimony of a party.  It does not, of course, mandate that a trial court permit the use of such deposition testimony at any time for any reason, if the testimony is inadmissible or otherwise inappropriate.  Rule 32.01 is simply not pertinent to the issue of whether the trial court erred in this case by not permitting Mr. McCrory's counsel to read to the jury, after

---

[5]Rule 32.01 provides in pertinent part:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Tennessee Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof in accordance with any of the following provisions:
> . . . .
> (2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a public or private corporation, partnership or association, governmental agency or individual proprietorship which is a party may be used by an adverse party for any purpose.

Tenn. R. Civ. P. 32.01.

the close of proof, portions of the deposition testimony that had not been admitted into evidence.

"In general, the control over the argument of counsel resides with the trial court, and the trial court has broad discretion as to what shall and shall not be permitted in argument." ***Smartt v. NHC Healthcare/McMinnville, LLC***, No. M2007-02026-R3-CV, 2009 WL 482475, at *19 (Tenn. Ct. App. Feb. 24, 2009), *perm. app. filed* Apr. 24, 2009 (quoting ***Davis v. Hall***, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995)). The appellate court will reverse the decisions of the trial court as to the argument of counsel only if it finds a palpable abuse of discretion.

Tennessee courts have traditionally afforded counsel wide latitude in the content of their closing argument to the jury. ***State v. Brown***, No. W2008-01866-CCA-R3-CD, 2010 WL 22812, at *6 (Tenn. Crim. App. Jan. 5, 2010), *perm. app. filed* Apr. 14, 2010 (citing ***State v. Zirkle***, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995)). However, "the policy of allowing latitude to counsel . . . does not mean there are no limits on argument." ***Russell v. State***, 532 S.W.2d 268, 271 (Tenn. 1976).

Closing argument is a crucial component of any jury trial. Because the jury is sworn to decide the case according to the evidence, perhaps the single most important feature of any closing argument is the attorney's discussion of the evidence and his efforts to persuade the jurors to view the evidence in the manner which he presents. For this reason, as a rule, the attorneys are confined in their argument to the facts and evidence in the record and any reasonable inferences therefrom. ***State v. Tate***, No. 02C01-9605-CR-00164, 1997 WL 746441, at *10 (Tenn. Crim. App. Dec. 3, 1997), *perm. app. denied* Oct. 5, 1998 (citing ***Russell***, 532 S.W.2d at 271); ***see*** 75 AM. JUR. 2D *Trial* § 414 (2010) ("Comments of attorneys that are proscribed in both civil and criminal cases are . . . references to matters not in evidence.").

In the instant case, Mr. Tribble's deposition was not admitted into evidence during the trial, and the excerpt Mr. McCrory's counsel sought to read during his closing argument was not utilized during the trial. Under these circumstances, we find no abuse of discretion in the trial court's decision not to permit Mr. McCrory's counsel to read excerpts from the deposition to the jury.

Mr. McCrory next argues that the trial court erred by refusing to reopen proof for consideration of the medical record showing that Mr. McCrory sought medical treatment the day after the incident. He contends that, in general, the trial court has inherent authority to do so, and is specifically authorized under Rules 59 and 60 of the Tennessee Rules of Civil

Procedure.[6] Citing **Simpson v. Frontier Cmty. Credit Union**, 810 S.W.2d 147 (Tenn. 1991), Mr. McCrory contends that the trial court should reopen proof when just results are at stake. Mr. McCrory asserts that the absence of the medical record caused the jury to inaccurately perceive that he was not a credible witness and resulted in a verdict for the Tribbles. He insists that the omission of the record from the evidence at trial "resulted from the mistake as made by the medical facility to abide by the terms of the [s]ubpoena" and "was compounded by the fact that [Mr. McCrory's attorney] did not notice that the medical record in question was absent from the stack of medical records."

"Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal." **Simpson v. Frontier Cmty. Credit Union**, 810 S.W.2d 147, 149 (Tenn. 1991) (citing **State v. Bell**, 690 S.W.2d 879 (Tenn. Crim. App. 1985)); **accord McGeehee v. Davis**, No. M2002-03062-COA-R3-CV, 2004 WL 66686, at *2 (Tenn. Ct. App. Jan. 15, 2004). However, in this exercise of discretion, proof is seldom reopened in a jury trial.[7] Indeed, Mr. McCrory cites no Tennessee case in which the trial court reopened proof *after* the jury had retired to deliberate, and we have found none.

In this case, it is undisputed that the Tribbles' attorney forwarded copies of the subpoenaed medical records to Mr. McCrory's attorney nearly six months prior to trial. Thereafter, the parties engaged in lengthy negotiations concerning stipulations as to the medical records and medical expenses. Clearly, counsel for Mr. McCrory had ample opportunity to review the medical records and discover the omission prior to closing arguments at trial. Under these circumstances, we cannot conclude that the trial court abused its discretion by declining Mr. McCrory's request to reopen proof.

Finally, Mr. McCrory argues that, in light of the foregoing alleged errors, the trial court erred in denying his motion for a new trial. We review the trial court's decision to deny a motion for a new trial under an abuse of discretion standard. **See Thacker v. Ball**, No. E2006-01876-COA-R3-CV, 2007 WL 1836846, at *5 (Tenn. Ct. App. June 27, 2007), *no perm. app.* (citing **Esstman v. Boyd**, 605 S.W.2d 237 (Tenn. Ct. App. 1979)). Having found no error

---

[6]Rules 59 and 60 of the Tennessee Rules of Civil Procedure address primarily post-trial motions and are not pertinent to the trial court's decision to decline to reopen the proof.

[7]**See, e.g., Harris v. Dominion Bk. of Middle Tenn.**, 1997 WL 273953, agt *5 (Tenn. Ct. App. May 23, 1997) (proof reopened after plaintiff closed case in chief, affirmed on appeal); **Higgins v. Steide**, 335 S.W.2d 533, 540 (Tenn. Ct. App. 1959) (abuse of discretion to reopen proof after evidence closed but before jury charge).

on the issues raised above by Mr. McCrory, we conclude that the trial court did not err in denying Mr. McCrory's motion for a new trial.

## CONCLUSION

The decision of the trial court is affirmed. The costs on appeal are taxed to the Appellant Duane McCrory, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE